## Biber, et ux., Appellants, *v.* Duquesne Light Company et al.

Argued April 14, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Edward B. Friedman*, with him *Arnold M. Friedman*, and *Friedman & Friedman*, for appellants.

*James E. Coyne*, with him *Lancaster, Mentzer, Coyne & Duffy*, for appellee, Duquesne Light Company.

*Theodore E. Breault*, with him *Egler & Reinstadtler*, for appellee, Asplundh Tree Expert Company.

OPINION BY WATKINS, P.J., September 22, 1975:

This appeal is from the judgment of the Court of Common Pleas of Allegheny County entered after a jury returned a verdict for the appellees, Duquesne Light Company and Asplundh Tree Expert Company.

The background of the case is as follows:

On November 22, 1968, appellants, Peter W. Biber and Eileen Biber, his wife, by Quit-Claim Deed to Right of Way and General Release of Claims for a consideration of $17,500.00 granted to the appellees a perpetual easement and right of way upon, over, under, along, across and through their property in South Fayette Township, taking approximately one and one-half (1½) acres.

The deed provided in part as follows:

"With the right, privilege and authority to erect, construct, maintain, use, repair, renew, operate and finally remove electric transmission system consisting of such circuits, cables and wires, including such appurtenant telephone, communication and control cables and wires, on such poles, "H" frames, supported structures, towers or columns, and together with such crossarms, anchors, guys and other fixtures and apparatus as the Company may at any time and from time to time deem necessary or proper for use in connection with said transmission system, together with the right to trim or remove, and control the growth of any trees, brush or shrubbery, and to remove obstructions, which at any time may interfere or threaten to interfere with the erection, construction, maintenance, use, repair, renewal, operation and final removal of said transmission system and to protect said transmission system from possible harm; and

"Also, with the right, privilege and authority to enter upon said piece or parcel of land at any time for the erection, construction, maintenance, use, repair, renewal, operation and final removal of any of the facilities erected on said easement and right of way, and the additional right at any time to replace one kind of construction with another, and the erection of one kind of support shall not preclude the erection of another; and

"The pieces or parcels of land upon, over, under, along, across and through which said easement and

right of way is located may be used for such uses and purposes as will not interfere nor threaten to interfere with the erection, construction, maintenance, use, repair, renewal, operation and final removal of said transmission system, and are not inconsistent therewith, provided, that no buildings or structures other than fences will be located or constructed within the limits of said easement and right of way; and, provided always that the said uses of said pieces or parcels of land shall not damage nor injure any of the property of the Party of the Second Part, its successors and assigns, upon said easement and right of way, nor interfere nor threaten to interfere in any manner with the erection, construction, maintenance, use, repair, renewal, operation and final removal of said transmission system."

Duquesne Light Company at least once in the past cleared the right of way by use of grub hooks and other tools by use of manual labor. In April, 1970, the light company entered into a contract with the appellees, Asplundh Tree Expert Company, to clear the right of way by use of a chemical defoliant known as Tordon 101. In June, 1970, Asplundh completed the work on this portion of the right of way.

Appellants brought an action based upon the alternative theories of negligence in the application of the chemical defoliants and trespass of the land based on the allegation that the use of chemical defoliants exceeded the rights granted under the terms of the deed.

The appellants had used their property for farming purposes. Mr. Biber is and has been an organic farmer for many years. Until 1970 the appellants used the land over which the easement ran for organic farming. As stated, the appellees in the past had cleared land by use of hand tools and brush hooks and other equipment. The appellants contend that the use of the spray destroyed all vegetation on the property and it was depriving them

of the use of the land so far as the use was not consistent with or interfering with the easement as follows:

> ". . . the right to trim or remove, and control the growth of any trees, brush or shrubbery, and to remove obstructions, which at any time may interfere or threaten to interfere with the erection, construction, and final removal of said transmission system and to protect said transmission system from possible harm . . ."

This created a question for the jury as to whether or not the vegetation in question interfered with the transmission lines as to require the use of the destructive spray.

That Duquesne through its agent Asplundh was rightfully on the easement and were not guilty of any wanton negligence was properly asserted by the court below in its charge and supported by the record. The court below in its charge effectively removed from the jury the question of whether or not the use of a chemical defoliant, Tordon 101, was a reasonable means of controlling growth within this portion of its right of way and whether the right to spray was included in the grant of the easement, wherein it charged:

> "If you find that Duquesne Light Company has the right to spray and I charge you, they did have the right to spray the land of the Bibers in the exercise of its privilege to clear the right of way, if you find that it was negligent in conducting those spraying, either directly or through its agent, then, of course, you could find a verdict in favor of the plaintiffs. That sets the limits and they are not very easily ascertainable. That is for you to determine whether or not there is any liability in the case."

This was a question of fact for the jury and not one of law for the court's determination. *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 293-294, 54 A.2d 35 (1947):

> " 'In other words, an easement appurtenant to a dominant tenement can be used only for the purposes

of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication,' (Citing numerous cases) : 9 R.C.L. 786, section 43. 'The use of an easement must be confined strictly to the purposes for which it was granted or reserved.': 9 R.C.L. 787, section 44. 'The right of the easement owner [or easement owners] and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be due a reasonable enjoyment of both . . . nothing passes as an incident to the grant of an easement except what is requisite to its fair enjoyment . . . if an easement is used for any purpose inconsistent with that for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use. No definite rule can be stated as to what may be considered a proper and reasonable use as distinguished from an unreasonable and improper use. The question is usually left to the jury or the trial court as one of fact.': 17 Am. Jur. 993, 994, 995, section 96."

Judgment reversed and a new trial granted.