577 A.2d 923

**ESTATE OF Frank S. SPICKLER, Deceased, Appellant,**

**v.**

**COUNTY OF LANCASTER BOARD OF COMMISSIONERS.**

Superior Court of Pennsylvania.

Submitted Nov. 29, 1989.

Decided July 16, 1990.

Henry F. Gingrich, Elizabethtown, for appellant.

John A. Kenneff, Millerville, for appellee.

Before BROSKY, BECK and HOFFMAN, JJ.

BROSKY, Judge.

This is an appeal from an order dismissing exceptions to a memorandum opinion in a quiet title action. The action was brought to litigate the existence of an easement over property which was formerly a railroad bed. The trial court found that no such easement existed and appellant has appealed raising several allegations of error and arguments in its favor, included among them, that there existed an

easement by operation of the Railroad Act of 1849. We reverse.

The facts of relevance are: Appellant, Estate of Spickler, brought this action to quiet title to an easement purportedly running across property that used to be a railroad and is now a recreational walking trail. Appellant asserts, inter alia, that there exists an easement by operation of law under the Railroad Act.

The relevant chain of title indicates that the land in question, plus additional land, was owned by Benjamin Brandt when a strip of Brandt's land was conveyed to C. & L. Railroad in 1881, effectively bisecting the remainder of Brandt's land. This conveyance, for practical purposes, created two separate parcels of land which were later conveyed separately. Appellant's property was the parcel to the north, and there was another to the south. The northern parcel was conveyed to Gibble and then to Groff then to Spickler. The deed from Brandt to Gibble indicates the presence of an easement along the northern boundary of the railroad's strip which was purportedly acquired in 1909. The same language is contained in the deed from Gibble to Groff. However, in the deed from Groff to Spickler there is described an easement across the railroad's land and to a public road accessible from the southern track. In fact, there exists a "farm road" across the railroad/county's land which has been in existence and used since at least 1912. It is the use of this way that is in question. The parcel conveyed to the railroad was used for a railroad until 1976. In 1979 the land was purchased by the county.

■ Appellant argues that it had an easement by operation of the Railroad Act of 1849. That act states:

Whenever, in the construction of such road or roads [railroads], it shall be necessary to cross or intersect an established road or way, it shall be the duty of the ... said company [railroad company], so to construct the said road [railroad] across such established road or way, as not to impede the passage or transportation of persons or

property along the same; and that, for the accommodation of all persons owning or possessing land through which the said railroad may pass, it shall be the duty of such company to make or cause to be made a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross and pass over the same, ...

15 P.S. § 4101. The trial court considered this Act but found that it did not support appellant's theory as it applied only to established roads and ways. However, there are essentially two parts to the statute; and, the trial court did not address the second part. This second part refers to the landowner's right to have an access way across the right-of-way/railroad when it divides the portion of land in two. Although the law is rather antiquated it remains valid today, and although the caselaw is equally old, it seems to support appellant's position.

One of the more recent decisions on this act is *Sonnen v. Reading Company*, 43 D. & C.2d 737 (1967). There the court discussed the railroad's duty to maintain access-ways across the railroad and noted several highly relevant general propositions regarding such rights of way. There it was stated:

> Under the plain meaning of the Act of 1849, a property owner whose land was severed by the taking of a right-of-way for railroad purposes was given a vested right to a private crossing on their own lands over the railroad's right-of-way. It is a right as sacred as any other property right. It was granted by the State, and no power but that of the State could deprive them of it: Green v. Baltimore & Ohio Railroad Co., 245 Pa. 35 [91 A. 248].

The court continued its discussion, later stating:

> Defendant's contention is that the existence of an alternate route, township road 640, as a means of access by plaintiffs, compels the conclusion that defendant need not repair and maintain bridge no. 18/22....
> We are of the opinion that, once a property owner acquired a private crossing over the right-of-way under the

Acts of 1849, he cannot be divested of this right by the subsequent location of a public road across the property which would supply a less convenient alternate crossing route. It is only in those cases where a public route crossing the right-of-way is in existence that a property owner cannot compel a railroad to furnish an additional private causeway crossing.

Nor are we of the opinion that the acquisition by one person of two lots or farms, each of which enjoys the benefit of the Act of 1849 by having private access causeways built thereon and maintained by the railroad, is a sufficient reason at law for the railroad to discontinue maintaining and repairing one of the crossings. As we pointed out previously, this is a vested right for which consideration was given. It is for the accommodation and convenience of the property owner.... If we were to accept defendant's contention in this regard, we would be divesting plaintiffs of a valuable legal right without compensating them for it.

We would note that, although *Sonnen* is a decision of the Court of Common Pleas, it is founded upon principles mostly asserted by our Supreme Court; and, that although rather old, those decisions remain valid law to this day. For instance, *Dubbs v. Philadelphia & Railroad Co. Reading,* 148 Pa. 66, 23 A. 883 (1892), held that the object of this section was to compel railroad companies to give the owners of farms divided by a railroad a convenient mode of access from one part to the other. In *Shepp v. Reading Belt Railroad,* 211 Pa. 425, 60 A. 985 (1905), it was held that where there is no public road crossing the landowner is entitled to a private one.

The error of the trial court appears to lie in the consideration of only part of the referenced Act without consideration of the other, and its defined purpose. The trial court found that the Act was inapplicable because it dealt only with established roads or ways. This is true to a certain extent, however, it is true only to that extent. The duty of the railroad described in the first part of the Act requires

them to build the railroad in such a way as to not impede traffic across then established roads. This might require the building of bridges and/or underpasses as was seen in *Sonnen*. However, there is another portion of the Act which has been unequivocally defined as intending to provide for access across the railroad by a landowner when the railroad shall bisect the landowner's land. The trial court failed to consider this portion of the Act.

■ Under the principles enunciated in *Sonnen* it would seem indisputable that at the time the strip of land was conveyed to the railroad and a railroad built upon it, Benjamin Brandt acquired a right to access *across the railroad,* as the railroad divided his land in two. Further, this right was a vested right as sacred as any other. *Sonnen*, by implication, further supports the theory that the easement is devisable to another, a theory which logic would further compel, lest there be too great a restraint upon alienation. To hold otherwise could result in many parcels of land so divided from being freely devisable due to lack of access. This would seem contrary to the intent of the Act. As such, it is rather easy to conclude that there was an inherent right of access across the railroad strip at all times relevant to the within controversy,[1] and that it was acquired by all subsequent purchasers of Brandt's land, including Spickler. As such, we conclude, the trial court's decision to the contrary must be reversed and remanded so that an appropriate order quieting title in the easement can be entered.

Order reversed, remanded to trial court for proceedings consistent with this opinion. Jurisdiction is relinquished.

BECK, J. files a dissenting opinion.

1. In this regard, we find irrelevant appellee's contention that the Act in question has been repealed. The fact of the matter is that it was in effect at the time of the conveyance to the railroad. Thus, the easement or right of access was established at that point in time and must be construed to run with the land. Absent some indication that the repealing of the Act was further designed to extinguish already existing rights acquired under it, we will not impute such an intent from the mere repealing of the Act.

BECK, Judge, dissenting.

I dissent. The majority has determined that appellant, the Estate of Frank S. Spickler, has an easement or right of way across a certain strip of land formerly used as a railroad bed and presently owned and used by appellee, the County of Lancaster, as a recreational walking trail. The majority bases this conclusion solely on the provisions of a now repealed statute, the Railroad Act of 1849, which provides in pertinent part:

Whenever in the construction of such road or roads [railroads], it shall be necessary to cross or intersect an established road or way, it shall be the duty of the ... said company, so to construct the said road across such established road or way, as not to impede the passage or transportation of persons or property along the same; and that, for the accommodation of all persons owning or possessing land through which the said railroad may pass, it shall be the duty of such company to make or cause to be made a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross or pass over the same, with wagons, carts and implements of husbandry, as occasion may require, and the said causeway or causeways, when so made, shall be maintained and kept in good repair by such company ...

Pa.Stat.Ann. tit. 15, § 4101 (Purdon 1967).

The majority reasons that under this section, when the railroad originally constructed its railroad bed, which bisected an existing farm and allegedly rendered the northern portion of the farm (the property in question) landlocked, the railroad had an absolute duty to provide the then owner of the landlocked property with an easement *across* the tracks. This right of access from the northern portion to the southern portion, the majority concludes, is a right inherent in the owner of the property who conveyed it to the railroad and a right that passed to each subsequent owner of the property, whether or not it was ever actually

granted by the railroad or reflected in the deeds from one owner to the next.

I disagree with this construction of the foregoing statute and with the conclusions drawn by the majority in applying the statute to the facts of the case before us. The statute does not provide that the railroad had an absolute duty to grant a private causeway across the railroad at a point along the portion of the railroad that bisected the northern and southern portions of this farm. The statute only states that the railroad must make such a causeway whenever it is *necessary* to enable the occupant of the farm to cross over the railroad.

Although the record in the instant case does not reveal precisely why the railroad did not create such a causeway at the time it first constructed the railroad, it is clear that the causeway was not established at that time. No such causeway appears in the chain of title to the railroad's land, nor did it appear in any deed to appellant's property until the deed to appellant's decedent in 1942, more than sixty years after the railroad was built. The origins of this reference in the 1942 deed to a causeway across the railroad are unknown. The appellant and appellee stipulated that there is now in existence a farm road across the railroad from the northern portion of the farm to the southern portion, and that this farm road is the causeway referred to in the 1942 deed. In this action to quiet title the appellant seeks a judicial determination that this causeway is an easement which has attached to his property. The record reveals that the earliest date on which this farm path began being used was 1912, more than thirty years after the railroad was constructed. Therefore, since no causeway was established when the railroad was constructed, we can only assume that it was either not *necessary* that such a causeway be established or that the then owner of the property waived the right to such a causeway.

We note that the record does contain one possible explanation for the failure of the railroad to create such a causeway. Since at least 1909, there was another means of

access across the railroad. Deeds to the property predating the acquisition of the land by appellant indicate that since at least 1909, there was an easement *along* the northern boundary of the railroad leading through the farm in question, through other land to the east and ending at a public road which could then be used to cross over the railroad. It is entirely possible that because this easement existed, perhaps informally before 1909 and then pursuant to a formal grant after 1909, it was not necessary that any private causeway be established when the railroad was originally constructed through the farm. It may well be that there already was a perfectly adequate means of access along the northern boundary of the railroad and then across it via a public road. In other words, it may well have been the custom of the original owner of the farm to use the existing public road to the east of the property to cross over the area on which the railroad was eventually built. If the original owner of the farm customarily exited the northern portion of the farm by going across it and across the lands adjoining the farm to the public road to the east, instead of transversing the entire length of the farm from north to south to access the public road to the south, and this means of access to the public road to the east was in no way impeded by the construction of the railroad, then perhaps the original owner simply did not demand the establishment of any other causeway across the railroad.

None of the authorities cited by the majority hold that the statute, which has now been repealed, granted a property owner whose land was bisected by a railroad an absolute right to a causeway across the railroad even when it was not necessary that such be established because there was already an existing means of access across the road or because the owner of the property did not require one as part of the consideration for the land taken by the railroad. For example, *Sonnen v. Reading Company,* 43 D. & C. 2d 737 (1967), on which the majority heavily relies, actually addresses a situation where a railroad had in fact constructed a private crossing over the railroad, presumably because

it was necessary to do so when the railroad was constructed, and then attempted to allow the crossing to fall into disrepair when another means of access across the railroad was later constructed. This is a highly distinct situation from that presented by the case at bar. Furthermore, although the *Sonnen* court did state that the statute gave to every property owner whose land was severed by a railroad a right to a private causeway across such railroad, the *Sonnen* court also emphasized that the vested right to such a causeway arose from the fact that the causeway, assuming it was in fact given by the railroad, formed part of the consideration for the property conveyed to the railroad.[1] In the instant case, no causeway was ever given, apparently because it was not necessary, and thus it did not form part of the consideration given to the original owner of the farm for the railroad's right of way. In consequence, there is no vested right in any of that owner's successors, including appellant.

Appellant has simply not established that in 1881, when the railroad was constructed, there was a causeway across the railroad which was necessary to enable the occupant of the farm to cross over the railroad. Clearly on this record there is nothing to support an absolute right in appellant to a present recognition of a right of way or easement across the former railroad dating back to when the railroad was constructed. No such right of way was established by the railroad at that time and appellant has not proven that the failure of the railroad to establish the right of way was a breach of its statutory duty which must now be remedied by a judicial grant of the right of way to appellant.

I have also reviewed appellant's other arguments in support of a finding of a right of way or easement across the

1. Likewise, in *Dubbs v. Philadelphia & Reading Railroad Co.,* 148 Pa. 66, 23 A. 883 (1892), the court dealt with an attempt by a railroad to remove a crossing which the railroad had established when the railroad was constructed. The court held only that the crossing was necessary to provide access over the railroad and should not have been removed.

railroad.[2]  Like the trial court, I find no merit in any of appellant's other arguments.  I would affirm the trial court's disposition of those issues based on the opinion of the trial court, authored by Judge Ronald L. Buckwalter of the Court of Common Pleas for Lancaster County.

**2.**  The majority found it unnecessary to address these arguments since it found for appellant solely on the ground that the Railroad Act provided appellant with a vested right to the right of way.