**Christopher KAPP, et al., Plaintiffs**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, Defendant**

**No. CIV.A.1:03–CV–1061.**

United States District Court, M.D. Pennsylvania.

Dec. 10, 2004.

Larry L. Miller, Duncannon, PA, for Plaintiffs.

Benjamin C. Dunlap, Jr., Craig J. Staudenmaier, Nauman, Smith, Shissler & Hall, LLP, Harrisburg, PA, for Defendant.

## *MEMORANDUM*

CONNER, District Judge.

This property rights case has been 150 years in the making. Plaintiffs claim an easement over railroad tracks presently operated by defendant, Norfolk Southern Railway Company ("Norfolk"). The land underlying the tracks was once owned by plaintiffs' predecessors in interest, and a crossing has been maintained for their benefit since before 1850. Nevertheless, Norfolk denies the existence of an easement and recently announced plans to close the crossing. Plaintiffs seek a declaration of their rights and an injunction against the closure.

Presently before the court are cross-motions for summary judgment (Docs.62, 64). Substantial evidence, much of it dating to the mid-Nineteenth Century, has been submitted by both parties in support of their respective positions. Counsel further defined the issues in controversy during a hearing on August 25, 2004. The motions are ripe for disposition.

## I. *Statement of Facts*

In 1847, two individuals owned adjoining tracts of land along the southern side of the Susquehanna River, in central Pennsylvania. A ninety-two acre tract held by John Greek lay to the east of a seventy-eight acre tract held by George Moore. (Doc. 66 ¶¶ 26–28, 36–37; Doc. 67, Ex. D ¶¶ 21, 64, 126–131; Doc. 75, Attach. 2 ¶¶ 26–28, 36–37). Through the middle of their lands extended railroad tracks, running parallel to the river. The tracks were operated by the Pennsylvania Rail Road Company but the underlying land was

owned by Greek and Moore respectively.[1] (Doc. 66 ¶¶ 26–32, 36; Doc. 75, Attach. 2 ¶¶ 26–32, 36; *see also* Doc. 67, Ex. D ¶¶ 21, 64, 114, 117, 126–131).

A public road, known as River Road, also extended through both tracts.[2] From the east, it crossed over the railroad tracks at a point called "Perdix Crossing." (Doc. 63, Ex. A; Doc. 66 ¶ 11; Doc. 67, Ex. D ¶ 122; Doc. 75, Attach. 2 ¶ 11). It bisected Greek's tract and continued into Moore's tract, running parallel to the river and along the northern edge of the railroad tracks. After entering Moore's property, the road turned slightly south, and proceeded back over the tracks via another crossing, now known as "Sibles Crossing." The road then continued west. (Doc. 67, Exs. A–C; Doc. 75, Exs. A, C).

During 1847 and 1848, Greek and Moore respectively conveyed the land underlying the railroad tracks to the Pennsylvania Rail Road Company. These conveyances split the tracts into northern and southern portions. Neither the Moore nor the Greek deed includes a reservation of an easement or right of way across the tracks or refers to the public road and existing crossings. (Doc. 66 ¶¶ 26–28, 36–38; Doc. 75, Attach. 2 ¶¶ 26–28, 36–38; *see* Doc. 67, Exs. A–C, Ex. D ¶¶ 21, 64, 72, 117, 126–131; Doc. 75, Exs. A, C).

Forty years later, River Road ceased to be a public thoroughfare. Other highways were being installed in the area, limiting the road's usefulness as a transit line, and the township entered a vacation order in 1887. The road then reverted to private ownership and was thereafter referred to as "Railroad Street."[3] (Doc. 67, Ex. D ¶¶ 122–25).

A new crossing, approximately one-half mile east of Sibles Crossing, was later installed by the Pennsylvania Rail Road Company over the railroad tracks encompassed by the original Greek tract. It connected Railroad Street to a recently completed public route, "Burley Road," which provided access to a public highway south of the tracks. (Doc. 67, Ex. B ¶¶ 7–8, Ex. C ¶¶ 4–6; Ex. D ¶¶ 124–25). The new crossing is now known as "Cove Crossing." A portion of Railroad Street to the east of Cove Crossing was closed to vehicular traffic and converted to private use. Perdix Crossing, which no longer connected to Railroad Street or otherwise served as an access point for residents, was subsequently removed. (Doc. 62 ¶ 11; Doc. 62, Ex. C; Doc. 67, Ex. C ¶¶ 4–6; Doc. 74, Attach. 1 ¶ 11; Doc. 99 ¶¶ 9–12; Doc. 99, Attachs. 1, 3; Doc. 100 ¶¶ 9–12; Doc. 103 ¶¶ 2–6).

As these events unfolded, the lands bordering the railroad tracks and the Susquehanna River changed hands several times. Several parcels that were originally part of the Moore tract were sold to plaintiffs Kathleen and Larry Miller ("Millers") and are currently identified as 204, 206, 208, and 216 Railroad Street. Other parcels, previously within the Greek tract, were also sold to the Millers and are now known as 120 and 122 Railroad Street. (Doc. 66 ¶¶ 26–28, 36–37; Doc. 75, Attach. 2 ¶¶ 26–28, 36–37; *see also* Doc. 67, Ex. D ¶¶ 21, 64, 126–131).

---

1. Counsel for the parties conceded this fact during the hearing on the cross-motions (Doc. 102 at 91). *See also* FED. R. CIV. P. 56(d) (stating that court may determine what facts are in controversy by "interrogating counsel" at the hearing on a motion for summary judgment).

2. Counsel for the parties conceded that River Road was, at one time, a public road (Doc. 102 at 59–63). *See also* FED R. CIV. P. 56(d).

3. Counsel for the parties conceded this fact during the hearing on the cross-motions (Doc. 102 at 59–63). *See also* FED. R. CIV. P. 56(d).

Another plaintiff, Grover Kisner ("Kisner"), purchased a separate parcel of the original Greek tract, now designated as 100 Railroad Street. Appearing in the chain of title to this property is the Pennsylvania Rail Road Company, which purchased a portion of the land in 1896 and sold it to one of Kisner's predecessors in interest in 1960. That deed provides that "access to and from the parcel . . . will be by means of said Public Road only and that a right [of] . . . passage-way . . . over the private grade crossing, approximately 150 feet South of said land, is not hereby granted." (Doc. 62, Ex. B; Doc. 67, Ex. D ¶ 101; *see also* Doc. 67, Ex. D ¶¶ 96–112). The phrase "said Public Road" is not defined, but the "private grade crossing" to which the deed refers is Cove Crossing.[4] Without access to Cove Crossing, the only means to cross the railroad tracks—and to reach a public highway—is Sibles Crossing. (Doc. 62, Ex. B; *see also* Doc. 62 ¶¶ 1, 4; Doc. 62, Exs. A, C; Doc. 67, Ex. D ¶ 101; Doc. 74, Attach. 1 ¶¶ 1, 4).

In 2002, Norfolk, as successor in interest to the Pennsylvania Rail Road Company, decided to close Sibles Crossing. It offered safety concerns as the primary justification. (Doc. 66 ¶¶ 6, 12; Doc. 75, Attach. 1 ¶¶ 6, 12; *see also* Doc. 67, Ex. A). The grade of the tracks at Sibles Crossing is purportedly too high, and many vehicles scrape the road surface. (Doc. 67, Ex. A). Railroad Street includes significant curves immediately south of the crossing, limiting drivers' line of sight. And vehicles exiting

Railroad Street by way of Sibles Crossing must travel over a private drive in order to merge onto the public highway. In contrast, Cove Crossing and Burley Road ostensibly provide a relatively straight and safe means of access to the highway. (Doc. 67, Ex. A).

The plaintiff-residents of Railroad Street disagree with Norfolk's assessment. They assert that Sibles Crossing provides the sole viable means of ingress and egress for those who reside to the west of a wooden bridge on Railroad Street. (Docs. 52–53). The bridge is in need of repair and cannot support larger vehicles, including firetrucks and ambulances. The residents contend that, if Sibles Crossing is closed, they will not have a safe connection to the public highway. (Docs. 52, 53; Doc. 62 ¶¶ 58, 61–62; Doc. 74, Attach. 1 ¶¶ 58, 61–62).

Several residents of Railroad Street commenced the instant civil action in a state trial court in 2003, and the case was soon removed to this court on grounds of diversity of citizenship.[5] (Doc. 1). They seek declaratory and injunctive relief, recognizing their property rights in Sibles Crossing and enjoining its closure without their approval. (Docs. 52, 53). Following discovery, the parties filed cross-motions for summary judgment. (Docs. 62, 64).

## II. *Standard of Review*

"Concurrent resolution of cross-motions for summary judgment can pres-

---

4. Counsel for the parties conceded this fact during the hearing on the cross-motions (Doc. 102 at 71). *See also* Fed. R. Civ. P. 56(d).

5. Plaintiffs are citizens of Pennsylvania (Doc. 52 ¶¶ 1–4; Doc. 53 ¶ 1; Doc. 54 ¶¶ 1–4; Doc. 55 ¶ 1), defendant is a citizen of Virginia (Doc. 52 ¶ 5; Doc. 54 ¶ 5), and the value of the relief sought by plaintiffs admittedly exceeds $75,000 (Doc. 1 ¶ 6; *see also* Docs. 52, 53). *See* 28 U.S.C. § 1332(a) ("The district

courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."); *see also id.* § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to [a] district court of the United States . . . .").

ent a formidable task." *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F.Supp.2d 230, 235 (M.D.Pa. 2004); *see also* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed.1998). The court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; *United States v. Hall*, 730 F.Supp. 646, 648 (M.D.Pa.1990). Adherence to this directive may require "two statements of the 'facts' of the same case" and may "counsel separate opinions on the respective motions." *Interbusiness Bank*, 318 F.Supp.2d at 236.

■ The cross-motions *sub judice* may be successfully resolved in a single decision. Counsel conceded at the hearing on the cross-motions that the nature of the evidence, as opposed to the legal ramifications thereof, is largely uncontroverted (Doc. 102 at 59). *See* 10A WRIGHT ET AL., *supra*, § 2725 ("[That] the parties differ on the legal conclusions to be drawn from the facts is not … a ground for denying summary judgment ….") (footnotes omitted). Factual disputes that existed during the earlier stages of the case have been resolved through discovery. The discussion in this memorandum reflects those facts as to which there is no reasonable controversy and no "genuine issue." *See* FED. R. CIV. P. 56(c), (d); *see also Schnall v. Amboy Nat'l Bank*, 279 F.3d 205, 209 (3d Cir.2002).

## III. *Discussion* [6]

■ An easement is a unique form of real property. It grants not a right of *possession* but a right of *use*. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2 cmts. a, d (2000); GRANT S. NELSON ET AL., CONTEMPORARY PROPERTY 688–89 (1996); *see also Clements v. Sannuti*, 356 Pa. 63, 51 A.2d 697, 698–99 (1947); *Leichter v. E. Realty Co.*, 358 Pa.Super. 189, 516 A.2d 1247, 1251–52 (1986) (Kelly, J., concurring). It affects not one but two parcels of land: The owner of dominant estate enjoys the benefits of the easement while the owner of the servient estate must honor and endure the burdens.[7] *Patricca v. Zoning Bd. of Adjustment*, 527 Pa. 267, 590 A.2d 744, 748 (1991); *Morning Call, Inc. v. Bell Atlantic–Pa., Inc.*, 761 A.2d 139, 142 (2000); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES §§ 1.2, 1.3, 1.5. It is not independently alienable but is conveyed concurrently with the estate to which it is tied. *See id.* §§ 5.1, 5.6.

■ In essence, an easement represents the transfer of a single stick of the bundle of fee simple rights from one parcel to another. *See Dolan v. City of Tigard*, 512 U.S. 374, 393, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); *United States v. 13.98 Acres*, 702 F.Supp. 1113, 1114–15 (D.Del.1988). The stick constitutes a certain use of the land to be enjoyed by the holder. *See Dolan*, 512 U.S. at 393, 114 S.Ct. 2309; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2. In granting an easement, the owner of the servient estate grants one stick to the owner of the dominant estate.

---

**6.** The following discussion relies, as it must in this diversity action, on Pennsylvania law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**7.** This description properly applies only to an "easement appurtenant," in which the benefit is not tied to a particular individual but is held by whomever owns the dominant parcel. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVI-

TUDES § 1.5. It may be distinguished from an "easement in gross," in which the benefit of the easement is held by a particular individual and "is not tied to ownership or occupancy of a particular unit or parcel of land." *Id.; see also Morning Call, Inc. v. Bell Atlantic–Pa., Inc.*, 761 A.2d 139, 142 & n. 6 (Pa.Super.2000).

*See id.* §§ 1.2, 1.3, 1.5. It thereafter remains in the bundle of rights attached to fee simple ownership of that parcel and may be enforced by the landowner. *See id.* §§ 5.1, 5.6.

 Because easements represent a limitation on the rights of ownership, their creation and duration are generally construed in favor of the servient estate owner. *See Garan v. Bender,* 357 Pa. 487, 55 A.2d 353, 354 (1947); *Biber v. Duquesne Light Co.,* 235 Pa.Super. 428, 344 A.2d 628, 630 (1975); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES §§ 2.1, 2.2, 4.1. Easements will be recognized only when the owner clearly intended to limit the rights of his or her estate. *Id.* §§ 2.2, 2.11, 7.14. And they will have effect against subsequent purchasers of the servient estate only when those purchasers had notice, either actual or constructive, of the existence of the easement. *Id.*

 Easements may be created by express agreement, by implication, by estoppel, or by operation of law.[8] *Morning Call,* 761 A.2d at 142; *Estate of Spickler v. County of Lancaster Bd. of Comm'rs,* 395 Pa.Super. 542, 577 A.2d 923, 924 (1990); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.1. The residents of Railroad Street invoke each of these doctrines in support of their claims to an easement over Sibles Crossing. They will be examined *seriatim.*

### A. *Easement by Express Agreement*

 Express easements are often created by deed reservation, in which the grantor reserves a right to use the conveyed property for a certain purpose. *See Brady v. Yodanza,* 493 Pa. 186, 425 A.2d 726, 727–28 (1981). A deed that contains

such a reservation imposes an easement on the conveyed tenement, which thereafter is considered the servient estate. *Id.* The owner of the property benefited by the easement (the dominant estate) may then use the servient estate for the purpose stated in the deed, regardless of subsequent divisions or transfers of ownership of the servient estate. *See id.*

 None of the deeds in the chain of title to the land underlying Sibles Crossing includes an express right of access for the residents of Railroad Street. The land was conveyed to the Pennsylvania Rail Road Company by Moore in the 1800s. This deed did not facially reserve to Moore, to Greek, or to anyone else a right of crossing. Subsequent purchasers of the Moore and Greek tracts cannot claim an express easement over Sibles Crossing by deed reservation.

 But deed reservation is not the only method by which to create an express easement. An owner of land may agree, through independent instrument, to convey an easement over a parcel. *Merrill v. Mfrs. Light & Heat Co.,* 409 Pa. 68, 185 A.2d 573, 575 (1962); *PARC Holdings, Inc. v. Killian,* 785 A.2d 106, 111–12 (2001). The agreement must be in writing and must clearly establish the grantor's intent to burden the servient estate. *Morning Call,* 761 A.2d at 142; *Haines v. Minnock Constr. Co.,* 289 Pa.Super. 209, 433 A.2d 30, 33 (1981) (citing *Yeakle v. Jacob,* 33 Pa. 376 (1859)); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.7.

 Kisner possesses an express easement over Sibles Crossing through independent contract. The Pennsylvania Rail Road Company previously owned a portion of 100 Railroad Street, and conveyed the

---

8. Easements may also be created by prescription. *Morning Call,* 761 A.2d at 142; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.1. Plaintiffs do not claim such an easement, and this issue will not be discussed further.

property to Kisner's predecessor in interest. The deed of conveyance states that, "upon understanding and agreement" of the parties, "access to and from the parcel ... will be by means of said Public Road only." (Doc. 62, Ex. B). The same section expressly provides that "a right or means of ingress, egress or passage-way ... over [Cove Crossing] ... is not hereby granted." (Doc. 62, Ex. B).

 The deed does not define "said Public Road" or use the term "easement" in describing the grantee's right of access. Ambiguities in a written conveyance are generally issues of fact, to be resolved by the trier based on the circumstances surrounding the agreement. *Merrill*, 185 A.2d at 575; *Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 377, 476 A.2d 1, 5 & n. 2 (1984). Nevertheless, when the extrinsic evidence of record reasonably supports only one construction of contractual language, the court may adopt that interpretation for purposes of summary adjudication. *Covington Township v. Pacific Employers Ins. Co.*, 639 F.Supp. 793, 797 (M.D.Pa.1986); *see also Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986) (stating that trier of fact should resolve "conflicting" evidence related to proper construction); *Metzger*, 476 A.2d at 5 & n. 2.

The ambiguity in the deed *sub judice* can be resolved only in favor of an easement over Sibles Crossing. The deed clearly demonstrates an intent to grant a right of "access to and from" 100 Railroad Street. (Doc. 62, Ex. B). The *only* means of access to the parcel at the time of the conveyance were Cove Crossing (to Burley Road) and Sibles Crossing (on Railroad

Street). The deed expressly prohibits the grantee from using Cove Crossing, leaving Sibles Crossing as the sole access point. The phrase "said Public Road" must refer to Railroad Street[9] and the provision for a right of "access to and from the parcel" must be construed to grant an express easement over Sibles Crossing. *See Merrill*, 185 A.2d at 575; *PARC Holdings*, 785 A.2d at 111–12.

██ Once granted, this easement was effective in favor of subsequent purchasers of 100 Railroad Street and against subsequent owners of the land underlying Sibles Crossing. The deed granting the easement was properly recorded in the county in which the crossing is located, as required by Pennsylvania law. *See* PA. STAT. ANN. tit. 21, § 351. Subsequent purchasers of property owned by the Pennsylvania Rail Road Company had an obligation to examine the deed and were on constructive notice of the easement. *See Piper v. Mowris*, 466 Pa. 89, 351 A.2d 635, 638–39 (1976); *Finley v. Glenn*, 303 Pa. 131, 154 A. 299, 301–02 (1931); *Southall v. Humbert*, 454 Pa.Super. 360, 685 A.2d 574, 578–79 (1996); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.14. The deed of 1960 created an easement over Sibles Crossing in favor of the owner of 100 Railroad Street.

 This easement may be enforced even though Norfolk states that it will *now* allow Kisner to use Cove Crossing. An express easement is presumptively perpetual in duration, and will be rendered void only if circumstances change to such a degree as to render the easement useless to the grantee.[10] *See Woodlawn*

---

9. Although the street was no longer public at the time of this conveyance, many individuals still referred to Railroad Street as a public road, and this error in description cannot defeat the obvious meaning of the term. *See*

*Merrill*, 185 A.2d at 575 (stating that deed should be construed to give effect to intent of the parties).

10. Of course, the owner of the servient tenement may not use his or her estate in a

*Trustees, Inc. v. Michel,* 418 Pa. 398, 211 A.2d 454, 456 (1965); *Tosh v. Witts,* 381 Pa. 255, 113 A.2d 226, 228 (1955); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES §§ 4.3, 7.10. Despite Norfolk's offer, the easement over Sibles Crossing continues to provide *some* benefit to Kisner as an alternative means of ingress and egress. The easement "has been, and still is, useful for access to the dominant tenement," *Woodlawn Trustees,* 211 A.2d at 457, and thus remains enforceable against Norfolk. Summary judgment will be granted in favor of Kisner with respect to his claim to an express easement over Sibles Crossing in favor of 100 Railroad Street.

**B. *Easement by Implication***

 Not all easements need be written and recorded to be effective. An easement may arise by implication when a landowner severs a parcel with the clear intent that a portion of the land conveyed be subject to a particular use for the benefit of the land retained. *Bucciarelli v. DeLisa,* 547 Pa. 431, 691 A.2d 446, 448–50 (1997); *Phillippi v. Knotter,* 748 A.2d 757, 760–62 (Pa.Super.2000); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.11 cmt. d. The easement is effective against subsequent purchasers of the servient estate if the use of the property is so open and apparent as to give reasonable notice of the existence of the right. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.14; *see also Possessky v. Diem,* 440 Pa.Super. 387, 655 A.2d 1004, 1009–10 (1995).

 Necessary to an easement by implication is prior unity of title of the servient and dominant tracts. *Soltis v. Miller,* 444 Pa. 357, 282 A.2d 369, 370 (1971). An implied easement is, in essence, a reservation of certain rights in the

conveyed parcel for the benefit of the property retained by the grantor. *See id.; Phillippi,* 748 A.2d at 760–62; *Possessky,* 655 A.2d at 1009–10; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.11 cmt. a. Thus, an easement may arise by implication only upon a severance of common ownership, and only when the circumstances indicate that the grantor intended to retain a certain use of one parcel. *Soltis,* 282 A.2d at 370; *Phillippi,* 748 A.2d at 760–62.

 The unity-of-title requirement defeats the claim to an easement by implication over Sibles Crossing in favor of 100, 120, and 120 Railroad Street. These properties were originally part of the Greek tract, whereas the land underlying Sibles Crossing was originally part of the Moore tract. Based on the record presented by the parties, the lands comprising the Greek tract and Sibles Crossing were never in unity of ownership. As such, no implied easement over Sibles Crossing could have arisen in favor of Greek or the subsequent purchasers of his property, at 100, 120, and 122 Railroad Street. *See Soltis,* 282 A.2d at 370.

In contrast, title to Sibles Crossing and the properties at 204, 206, 208, and 216 Railroad Street was at one time under the common ownership of Moore. When Moore sold the strip of land underlying Sibles Crossing to the Pennsylvania Rail Road Company, an easement by implication was arguably created in favor of Moore, which may now be enforced by his successors in interest. *See id.;* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.14.

 An easement by implication over a roadway may arise in several circum-

---

manner that would materially disrupt enjoyment of the easement. *See Piper,* 351 A.2d at

638–39; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9.

stances: when access to the road is necessary for enjoyment of the dominant parcel, when a deed incorporates the road as a boundary, or when the road was regularly used prior to severance. *See id.* §§ 2.11–2.15. Plaintiffs claim an easement under each of these theories.

### 1. *Easement Implied by Necessity*

 An easement will be implied by necessity only when, upon severance of ownership, the dominant parcel is left with no means to access a public road. *Soltis,* 282 A.2d at 370; *Phillippi,* 748 A.2d at 760–62; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.15. The law presumes that grantors generally intend to maintain a right of access to lands retained. *See id.* § 2.15 cmt. a. When a conveyance would otherwise prohibit such access, a limited easement over a conveyed parcel will be recognized to ensure the grantor's ability to enter and exit the retained property. *See id.* The necessity giving rise to the easement must be "absolute," affording no alternative means of ingress and egress, and must exist at the time of conveyance. *Soltis,* 282 A.2d at 370; *Phillippi,* 748 A.2d at 760–62; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.11 cmt. a.

 The presence of a public road through the Moore tract at the time of the original conveyance to the Pennsylvania Rail Road Company defeats plaintiffs' claim to an easement by necessity over Sibles Crossing. When Moore conveyed the land at issue, he had free access to River Road, which extended west and east over the railway and provided an available means of ingress and egress. Although the subsequent vacation of the roadway's

public status arguably landlocked the tract,[11] this condition did not exist at the time of conveyance, and an easement by necessity cannot be implied. *See Soltis,* 282 A.2d at 370.

### 2. *Easement Implied by Roadway Boundaries*

 When deeds to several properties conveyed by a common grantor include reference to a roadway as a boundary, it is presumed that the grantor intended to create a right of access over the roadway in favor of all abutting parcels. *Beechwood v. Reed,* 438 Pa. 178, 265 A.2d 624, 626–27 (1970); *Rahn v. Hess,* 378 Pa. 264, 106 A.2d 461, 464 (1954). This intent will be honored through recognition of an implied easement in favor of the conveyed parcels. *Jones v. Sedwick,* 383 Pa. 120, 117 A.2d 709, 711–12 (1955); *Ferko v. Spisak,* 373 Pa.Super. 303, 541 A.2d 327, 330 (1988), *aff'd,* 522 Pa. 503, 564 A.2d 157 (1989). Subsequent purchasers have notice of the easement through the chain of title, which includes reference to the roadway. *See id.; see also Rahn,* 106 A.2d at 464; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES §§ 2.13, 7.14.

 Neither the deed to the original Moore tract nor the conveyance to the Pennsylvania Rail Road Company refer to Railroad Street, then known as River Road, as the boundary of the property. Plaintiffs unpersuasively argue that the mere existence of a public roadway necessarily implies an easement over its length in favor of abutting landowners, which arises upon vacation of the public status of the thoroughfare. This position ignores the theoretical underpinnings of the ease-

---

11. The court notes that plaintiffs apparently have a reasonably available means of access over Cove Crossing, which Norfolk has promised will remain open. *See Dulaney v. Rohanna Iron & Metal, Inc.,* 344 Pa.Super. 45, 495

A.2d 1389, 1391 (1985) (stating that an easement by necessity is enforceable for only so long as the necessity remains) (citing *Wissler v. Hershey,* 23 Pa. 333 (1854)); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.3 (same).

ment by implication doctrine. An easement will be imposed only when the landowner, or a predecessor in interest, clearly intended to burden the estate. *Rahn,* 106 A.2d at 464; *Chambersburg Shoe Mfg. Co. v. Cumberland Valley R.R. Co.,* 240 Pa. 519, 87 A. 968, 969–71 (1913). This intent may be presumed when a deed in the chain of title contains express reference to a roadway as a boundary, suggesting that the grantor recognized the benefit of the street as an access route for all abutting parcels. *See Beechwood,* 265 A.2d at 626–27; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.13 cmts. a, c. It may not be presumed, however, when the deed makes no reference to the roadway. To the contrary, such an omission suggests an intent to preclude use of the land if the roadway is vacated. *See id.* Without any allusion to the roadway in underlying deeds, the court cannot imply that Moore intended to reserve a right of access when he conveyed the property underlying Railroad Street. *See Ferko,* 541 A.2d at 330 (citing *Rahn,* 106 A.2d at 464).

### 3. *Easement Implied by Prior Use*

 An easement may also be implied when, at the time of severance, the grantor used a portion of the property conveyed for a certain purpose and apparently intended to continue that use following conveyance. *Bucciarelli,* 691 A.2d at 448–50; *Phillippi,* 748 A.2d at 760–62; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.12. Although not expressed in the

deed, it may be inferred in these circumstances that the grantor intended to reserve an easement over the conveyed parcel. *See id.* Whether an easement should be recognized depends upon the frequency and consistency of the prior use, the necessity of the use for enjoyment of the property previously benefited, and the conspicuousness of the use. *Bucciarelli,* 691 A.2d at 448–50; *Phillippi,* 748 A.2d at 760–62; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.12.

 Numerous factual issues remain unresolved, and the court is unable to enter summary judgment in favor of either party on the claim of an easement implied by prior use. River Road existed when Moore conveyed Sibles Crossing to the Pennsylvania Rail Road Company, and access over the crossing clearly could have benefited the parcels over which Moore maintained ownership. However, little evidence has been presented of the frequency with which the road was used or the necessity of the road to the Moore properties. On the summary judgment record, the court cannot finally determine whether Moore intended his access to the road to remain open. Resolution of this issue will await trial.[12]

### C. *Easement by Estoppel*

 An easement by estoppel—traditionally considered an irrevocable license in Pennsylvania[13]—will arise when a landowner permits a use of property under circumstances suggesting that the permis-

---

12. It may be noted that, if an easement may be implied based on prior use, the easement likely may be enforced against subsequent purchasers based on the obvious existence of the roadway. *Bucciarelli,* 691 A.2d at 448–50; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.14.

13. As Pennsylvania courts have noted, easement by estoppel and irrevocable license are merely different labels for the same concept.

*E.g., Morning Call,* 761 A.2d at 144; *see also* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2 cmt. g. The Restatement has dropped the latter phrase in favor of the former, *see id.,* and the court will adhere to this nomenclature in light of the general inclination of Pennsylvania tribunals to follow the Restatement approach, *see, e.g., Morning Call,* 761 A.2d at 144.

sion will not be revoked, and the user changes his or her position in reasonable reliance on that permission. *Morning Call,* 761 A.2d at 144 (citing *Huff v. McCauley,* 53 Pa. 206, 208 (1866)); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.10. The permission need not be express, but may be inferred through the owner's acquiescence in an open and obvious use of the land. *See Turnway Corp. v. Soffer,* 461 Pa. 447, 336 A.2d 871, 878 (1975); *see also* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.10 cmt. e. An owner who allows a use of the land to continue "under circumstances in which it is reasonable to foresee that the [user] will substantially change position" is thereafter estopped from denying the existence of an easement in favor of the user. *Id.* § 2.10(1); *accord Morning Call,* 761 A.2d at 144.

■ Neither side is entitled to judgment as a matter of law regarding the existence *vel non* of an easement by estoppel over Sibles Crossing. The Pennsylvania Rail Road Company and Norfolk allowed all of the residents of Railroad Street to use the roadway for ingress and egress. Norfolk's maintenance of the crossing indicates that it had knowledge of this use and that the residents could reasonably believe that permission to use the road would not be revoked. Nonetheless, it is unclear from the record whether and to what degree the residents changed their position in reliance on this permission. Several depositions suggest obliquely that the residents would not have purchased property or made improvements thereon had they known that Sibles Crossing would be closed. Whether equitable considerations warrant the imposition of an easement by estoppel in favor of these individuals is a factual determination that should be made on the basis of a complete

and final record. Summary judgment on this claim will be denied.

## D. *Easement by Operation of Law*

■ An easement may also arise by operation of law. *See Spickler,* 577 A.2d at 924. The legislature may deem that imposition of an easement in certain, defined circumstances would serve the public interest. *See id.* An example is the Pennsylvania Railroad Act of 1849, Pub.L. No. 79, 1849 Pa. Laws. 76. Before its repeal in 1978, the Act provided, in pertinent part, as follows:

> Whenever in the construction of [a railroad track], it shall be necessary to cross or intersect an established road or way, it shall be the duty of the ... [railroad] company, so to construct the said [railroad track] across such established road or way, as not to impede the passage or transportation of persons or property along the same ....

PA. STAT. ANN. tit. 15, § 4101 (Purdons 1967) (repealed 1978), *quoted in Spickler,* 577 A.2d at 924. The Railroad Act establishes an easement by operation of law across railroad tracks constructed over an existing road. *See id.* at 923–24.

■ The creation of an easement by operation of law over Sibles Crossing would be clear if the Pennsylvania Rail Road Company had constructed the tracks *after* 1849. The Railroad Act provides that an easement arises when tracks cross an established roadway *during construction. Id.; see also Balt. & O.R. Co. v. Pub. Serv. Comm'n,* 80 Pa.Super. 443 (Pa.Super.1922). The tracks at issue were built before 1849, and before the enactment of the Railroad Act. No language in the statute suggests that it should have retroactive effect or apply to existing rail lines. *See Peoples' Fire Ins. Co. v. Hartshorne,* 84 Pa. 453 (1877) (stating that, in the absence of clear evidence of contrary

legislative intent, a statute may be given only prospective effect), *cited in Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987, 990 (1983); *see also* 1 PA. CONS. STAT. § 1926 (2003). Therefore, the Act has no application in this case and cannot support an easement by operation of law.

## IV. *Conclusion*

Kisner, the resident of 100 Railroad Street, enjoys a valid express easement over Sibles Crossing based on the undisputed evidence of record. The residents of 204, 206, 208, and 216 Railroad Street may be able to establish an easement by implication if they can offer further evidence regarding the frequency and necessity of use of the crossing at the time of severance of the original tract. All residents of Railroad Street, including those at 100, 120, and 122 Railroad Street, could successfully claim an easement by estoppel by introducing additional proof that they substantially changed their positions in reasonable reliance on the availability of the crossing. These issues will be decided at trial.

Plaintiff's motion for summary judgment will be granted as to the claim for an express easement over Sibles Crossing in favor of 100 Railroad Street. The cross-motions will otherwise be denied.

An appropriate order will issue.

### ORDER

AND NOW, this 10th day of December, 2004, upon consideration of the cross-motions for summary judgment (Docs.62, 64), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Plaintiffs' motion for summary judgment (Doc. 62) is GRANTED with respect to the claim of Grover Kisner to an express easement and is DENIED in all other aspects.

2. Defendant's motion for summary judgment (Doc. 64) is DENIED.

3. Defendant's motion to strike supplemental affidavit (Doc. 94) is DENIED as moot.[1]

4. The statement of facts contained in the accompanying memorandum shall be deemed established for purposes of trial. *See* FED. R. CIV. P. 56(d).

5. The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.

---

1. The supplemental affidavit (Doc. 93) was filed by plaintiffs in October 2004, nearly six months after the filing of the cross-motions for summary judgment (Docs.62, 64), *see* L.R. 7.3 ("[S]upporting documents must be filed within ten (10) days after the motion has been filed, unless otherwise ordered by the court."), and was not relied upon by the court in this decision.