Clyde A. PHILLIPPI and Roger
L. Phillippi, Appellants,

v.

Charles D. KNOTTER and Virginia
Knotter, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 28, 1999.
Filed March 13, 2000.

Vincent J. Barbera, Somerset, for appellants.

Wilbert H. Beachy, III, Somerset, for appellees.

Before POPOVICH, JOYCE and BROSKY, JJ.

POPOVICH, J.:

¶ 1 Appellants appeal from a final decree entered on May 12, 1999, in the Court of Common Pleas of Somerset County that denied appellants' post-trial motions and appellees' post-trial motion. Appellants sued for injunctive relief requesting the grant of an easement over the land of appellees. Appellees counterclaimed by denying the existence of an easement and claiming that appellants had been trespassing on their land. On October 23, 1998, the trial court denied appellants' request for permanent injunctive relief in the form of an easement across appellees' land. The trial court additionally found for appellees on their count of trespass against appellants and granted appellees a permanent injunction enjoining appellants from entering or otherwise interfering with the use of appellees' land. Appellants and appellees filed timely post-trial motions that were denied, and this appeal followed. Upon review, we affirm the final decree of the trial court.

■ ¶ 2 Our standard of review in matters of equity is the following:

[A]ppellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious.

*Southall v. Humbert*, 454 Pa.Super. 360, 685 A.2d 574, 576–577 (1996) (citations omitted). An easement may be created 1) expressly; 2) by prescription; 3) by necessity; or 4) by implication. *National Christian Conference Center v. Schuylkill Township*, 142 Pa.Cmwlth. 308, 597 A.2d 248, 250 (1991). Herein, appellants ask the following:

1. Does an easement by necessity exist in favor of the Appellants over land of the Appellees to provide access for the Appellants to their property when the Appellants' property and

the Appellees' property were at one time one property which was divided by Appellees' predecessor in title and thereby landlocked the Appellant's property?

2. Did the now repealed Railroad Act, 15 P.S. § 4101, provide the Appellants' predecessors in title with access to the parcel in question?

3. Does an easement exist by implication in favor of the Appellants over the property of the Appellees?

4. Should an injunction be issued in favor of the Appellants against the Appellees to prevent the Appellees from interfering with the Appellants' use of the access road which crosses the Appellees' property and which provides the sole means of access to the Appellants' property for the Appellants?

Appellants' brief, at 2.

¶ 3 The parties to the present case are the owners of two distinct parcels of land that at one time were a single parcel owned by O'Brien Coal Company. On August 19, 1910, O'Brien Coal Company conveyed in fee simple a section of this property one hundred feet in width to the Connellsville and State Line Railroad Company ("Railroad"). This conveyance to the Railroad bisected O'Brien Coal Company's remaining property into an eastern section and western section. However, access to both the eastern and western sections of the property was available via a public road.

¶ 4 On August 25, 1917, O'Brien Coal Company conveyed to E.J. O'Brien, who was the president of the coal company at the time, approximately 45 acres of O'Brien Coal Company's remaining land. This 45–acre tract consisted of approxi- mately 40 acres of land immediately east of the Railroad's property and 5 acres of land immediately west of the Railroad's property. O'Brien Coal Company owned the remaining land to the south of this 45–acre parcel. A public road provided access to the western section of E.J. O'Brien's parcel. The record does not demonstrate how E.J. O'Brien accessed the section of his parcel that laid east of the Railroad's right-of-way. The deed that conveyed this parcel to E.J. O'Brien contains very specific language concerning the description of the property conveyed as well as descriptions of coal mining and timber rights. However, this deed does not contain language creating an easement from the eastern section of E.J. O'Brien's parcel over the remaining land of O'Brien Coal Company to the public road.[1]

¶ 5 E.J. O'Brien's parcel of land was taken by the Commissioners of Somerset County during the Great Depression due to E.J. O'Brien's failure to pay taxes. Eventually, appellants became the owners of the 45–acre tract once owned by E.J. O'Brien. The remaining land owned by O'Brien Coal Company that was situated to the south of E.J. O'Brien's parcel was also taken by the Commissioners of Somerset County during the Great Depression due to O'Brien Coal Company's failure to pay taxes. Eventually, appellees became the owners of this parcel of land once owned by O'Brien Coal Company.

¶ 6 Appellants' parcel of land remains bisected into an eastern and western section by the strip of land once owned by the Railroad.[2] A public road runs through the western section of appellants' parcel of land. Appellants claim that the eastern section of their parcel is landlocked. As a result of this allegation concerning the eastern portion of their property, appel-

---

1. Appellants suggest that the reason why the deed did not grant E.J. O'Brien an easement was due to the fact O'Brien Coal Company was conveying land to its president. "[T]he formality of granting a right-of-way may have been inadvertently ignored since access to the President of the company across the compa- ny's property is expected and typical." Appellants' brief, at 18.

2. This strip of land is presently owned by Somerset County pursuant to the Rails to Trails Act, 32 P.S. §§ 5611–5622.

lants allege that either an easement by necessity or an easement by implication exists from the southern part of the eastern section of appellants' parcel through appellees' parcel to the public road. This alleged easement connects the eastern section of appellant's parcel to the public road that runs through the western section of appellants' parcel. Although appellants describe the alleged easement as an "access road", this description does not comport with the facts of record that depict this strip of land as an incline of a former tramway that was once used for mining and sporadic timber activities.[3] Usage of this incline occurred only with the consent of appellees' predecessor in title and appellees.

¶ 7 After appellants became the owners of their current parcel, they asked appellees to fill in a ditch that obstructed the alleged easement and for permission to use the alleged easement in order to obtain firewood. Appellees filled in the ditch and allowed appellants to use the alleged easement. Subsequently, appellees revoked their permission when traffic upon the alleged easement increased and purportedly damaged this particular tract of land. In turn, a dispute between the parties concerning the alleged easement ensued and culminated into the present lawsuit.

■■■ ¶ 8 First, we address appellant's claim that an easement by necessity exists over the property of appellees. Claiming the existence of an easement by necessity contemplates a situation in which a parcel of land is landlocked.[4] "It is a well-settled principle of law that, in the event property is conveyed and is so situated that access to it from the highway cannot be had except by passing over the remaining land of the grantor, then the grantee is entitled to a way of necessity over the lands of his grantor." *Possessky v. Diem*, 440 Pa.Super. 387, 655 A.2d 1004, 1010 (1995)(citing *Soltis v. Miller*, 444 Pa. 357, 359, 282 A.2d 369, 370 (1971)). The three fundamental requirements for an easement by necessity to arise are the following:

1) The titles to the alleged dominant and servient properties must have been held by one person.

2) This unity of title must have been severed by a conveyance of one of the tracts.

3) The easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

*Graff v. Scanlan*, 673 A.2d 1028, 1032 (Pa. Cmwlth.1996).

■■■ ¶ 9 An easement by necessity is always of *strict necessity*. *Graff*, 673 A.2d at 1032 (emphasis original). An easement by necessity never exists as a mere matter of convenience. *Possessky*, 655 A.2d at 1010. As stated previously, "an easement by necessity is extinguished when the necessity from which it resulted ceases to exist." *Id*.

■■■ ¶ 10 Herein, the evidence of record establishes that: (1) there was unity of title between the property of appellants and appellees; and (2) the unity of title was subsequently severed in 1917 when O'Brien Coal Company conveyed the prop-

---

3. Appellants most likely discovered the term "access road" after consulting a survey map made by Allen Pletcher of the parties' property. However, this survey map labeled the alleged easement as *"possible access"*. Mr. Pletcher testified that he referred to the alleged easement as "possible access" because prior owners of the parties' properties at one time considered the placement of a right-of-way in this location. (N.T. 2/20/98, at 43). Mr. Pletcher further testified that "rather than redo the drawing, that's why I showed it as a possible access so that ... if it was something that could be deeded or they could agree on that ... I wouldn't have to redo the drawing at that point." (N.T. 2/20/98, at 43).

4. Black's Law Dictionary (7th edition 1999), at 883, defines "landlocked" as "[s]urrounded by land, often with the suggestion that there is little or no way to get in or out without crossing the land of another."

erty now owned by appellants to E.J. O'Brien. However, appellants failed to demonstrate the existence of necessity at the time of the original severance and presently.

¶ 11 The fact that O'Brien Coal Company conveyed only one parcel of land to E.J. O'Brien is the principal factor that guides our present analysis in determining the existence of an easement by necessity. From the time of the original severance to the present, the western portion of the land currently owned by appellants has been accessible from a public road. Therefore, the situation caused by the original severance was not that of *strict necessity* in which property was conveyed in such a way that access to it from a public road could not be had except by passing over the remaining land of the grantor. We believe the term "strict necessity" in this context requires that property be without *any* access to a public road. Allowing an individual to use the doctrine of easement by necessity to ensure that each portion of his or her singular property has access to a public road would be far too expansive for this intrusive doctrine.[5] Consequently, we find that the trial court's conclusion that an easement by necessity does not exist is correct.[6]

¶ 12 Next, we address appellants' argument that an easement by implication exists in favor of appellants over appellees' property. "An easement by implication can be found to exist where the intent of the parties is demonstrated by the terms of the grant, the property's surroundings and any other res gestae of the transaction." *Sentz v. Crabbs*, 428 Pa.Super. 205, 630 A.2d 894, 895–896 (1993) (citation omitted). Two different tests have been utilized in this Commonwealth to determine whether an easement has been created by implication: the traditional test and the Restatement of Property test. *Possessky*, 655 A.2d at 1008. The Pennsylvania Supreme Court defined the traditional test as follows:

> It has long been held in this Commonwealth that although the language of a granting clause does not contain an express reservation of an easement in favor of the grantor, such an interest may be reserved by implication, and this is notwithstanding that the easement is not essential for the beneficial use of the property.... The circumstances which will give rise to an impliedly reserved easement have been concisely put by Chief Justice Horace Stern speaking for the Court in *Tosh v. Witts* [381 Pa. 255, 113 A.2d 226 (1955) ]:
>
> > "[W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right of way." [*Tosh*, 113 A.2d at 228] (citations omitted).

*Bucciarelli v. DeLisa*, 547 Pa. 431, 437–438, 691 A.2d 446, 448–449 (1997) (citations omitted). Our Supreme Court further stated:

---

5. We note that appellants have not sought relief pursuant to 36 P.S. §§ 2731–2891, commonly known as the Private Road Act, that would allow appellants to petition that a Board of View be appointed to determine whether or not a private road should be installed to connect the eastern section of their parcel to a public road. Unlike an easement by necessity, the Private Road Act "does not require an absolute necessity, such as being completely landlocked." *Graff*, 673 A.2d at 1033 (citation omitted).

6. Appellants argue that the trial court incorrectly cited to the Railroad Act of 1849, 15 P.S. § 4101 (repealed 1978), to support its finding that there was no necessity at the time of severance. However, the reasoning supporting our conclusion that necessity did not exist at the time of severance renders this argument moot. Accordingly, we decline to discuss the applicability of the Railroad Act of 1849 to the present case.

Easements by implied reservation ... are based on the theory that continuous use of a permanent right-of-way gives rise to the implication that the parties intended that such use would continue, notwithstanding the absence of necessity for the use.

*Id.*, 691 A.2d at 449 (citation omitted).

¶ 13 The Restatement of Property test "emphasizes a balancing approach, designed to ascertain the actual or implied intention of the parties." *Possessky*, 655 A.2d at 1008. "No single factor under the Restatement approach is dispositive." *Id.* Section 476 of the Restatement of Property designates the following factors as important in determining whether an easement by implication exists:

  (a) whether the claimant is the conveyor or the conveyee,

  (b) the terms of the conveyance,

  (c) the consideration given for it,

  (d) whether the claim is made against a simultaneous conveyance,

  (e) the extent of necessity of the easement to the claimant,

  (f) whether reciprocal benefits result to the conveyor and the conveyee,

  (g) the manner on which the land was used prior to its conveyance, and

  (h) the extent to which the manner of prior use was or might have been known to the parties.

*Id.* (citing *Mann–Hoff v. Boyer*, 413 Pa.Super. 1, 604 A.2d 703, 706–707 (1992)). In addition, this court has noted that "[t]he extent to which an easement is necessary under the circumstances is a factor heavily weighed in determining whether an easement should be implied." *Id.* (quoting *Tomlinson v. Jones*, 384 Pa.Super. 176, 557 A.2d 1103, 1104 (1989)).

¶ 14 An easement by implication could have arisen only at the time at which ownership of the two parcels in question first became separated. *Possessky*, 655 A.2d at 1009. Thus, the primary focus under either of the two tests is on the time of the original severance of the property which was originally owned by O'Brien Coal Company. Herein, a review of the facts under either the traditional or Restatement test demonstrates that appellants are not entitled to an easement by implication even with the relaxed burden of proof demanded when dealing with a right of ancient origin too remote to be capable of direct proof. *See Possessky*, 655 A.2d at 1008.

¶ 15 Under the traditional test, appellants failed to demonstrate the existence of an easement by implication. The traditional test requires appellants to prove that at the time of the original severance, there was an open, visible, continuous and permanent use of the alleged easement. *See Bucciarelli, supra*. Regarding the question of use, we agree with the trial court's conclusion that there was not enough evidence to show open, visible, continuous and permanent use of the alleged easement at the time O'Brien Coal Company conveyed the parcel to E.J. O'Brien. Although there was testimony that appellees allowed previous owners of appellants' parcel to use the alleged easement for various mining and timber activities, this usage was temporary and ceased after the activities were completed.

¶ 16 Under the more flexible balancing approach of the Restatement of Property, appellants also failed to show that an easement by implication arose as a result of the conveyance from O'Brien Coal Company to E.J. O'Brien. Applying the factors set forth by the Restatement of Property, we note the following: (1) appellants are neither the conveyors nor conveyees; (2) the conveyance did not grant E.J. O'Brien an easement over the property of O'Brien Coal Company; (3) the consideration recited in the conveyance is "the sum of one dollar and other valuable consideration"; (4) the present claim is not made against a simultaneous conveyance. In addition, we note that there is not enough evidence to suggest the existence of necessity for the easement at the time

of the original conveyance and whether reciprocal benefits resulted to O'Brien Coal Company and E.J. O'Brien. Furthermore, other than coal mining and timbering, it was not possible to determine the manner in which the land was used prior to the conveyance from O'Brien Coal Company to E.J. O'Brien. In balancing the aforesaid factors, we find that the trial court correctly determined that no easement by implication arose as a result of the conveyance from O'Brien Coal Company to E.J. O'Brien.

¶ 17 Since we find that neither an easement by necessity nor an easement by implication exists over appellees' parcel for the benefit of appellants, appellants' argument concerning the issuance of an injunction to prevent appellees from interfering with appellants' use of the alleged easement is moot. Therefore, we decline to address the merits of this argument.

¶ 18 For the foregoing reasons, we affirm the final decree of the trial court.

¶ 19 Final decree affirmed.