J-A26032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SCOTT RICHARD CRABTREE AND JON R. CRABTREE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| BRIDGET FERNANDEZ | : | No. 1112 EDA 2021 |

Appeal from the Order Entered April 21, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-03264

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED FEBRUARY 9, 2022**

Brothers Scott Richard Crabtree and Jon R. Crabtree (Appellants) appeal from the order entered in the Montgomery County Court of Common Pleas denying their petition seeking a preliminary injunction against Bridget Fernandez (Appellee) to permit ingress and egress over an alleyway, owned by Appellee, to access parking in the rear of Appellants' property.[1]  Appellants argue the trial court erred and/or abused its discretion when it denied preliminary injunctive relief.  For the reasons below, we affirm.

The facts underlying this appeal are as follows.  In July or August of 2020, Appellants signed an agreement of sale to purchase a two-story duplex

---

[1] An order denying a motion for a preliminary injunction is an interlocutory order appealable as of pursuant to Pa.R.A.P. 311(a)(4).  **See** Pa.R.A.P. 311(a)(4) ("An appeal may be taken as of right . . . from . . . [a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction[.]").

at 142 West Fourth Avenue in Conshohocken, Pennsylvania. N.T., 4/20/21, at 6-7, 33. Their intent was to rent the units on each floor. *Id.* at 7. In the rear of the property is a "small back yard[ a]nd behind that . . . is [a] paved driveway-parking area[.]" *Id.* at 9. The only access to that parking area is through an alleyway on Maple Street, located between the properties at 405 and 407 Maple Street. *Id.* at 10-12.

Appellee is the owner of the adjacent property at 146 West Fourth Avenue, which she purchased in December of 2010. N.T. at 39. She also owns the alleyway on Maple Street, that provides the only access to the parking area in the rear of Appellants' property. The deeds for the properties at 405 and 407 Maple Street both contain express easements for use of the alleyway; however, Appellants' deed does not. *Id.* at 12, 37. Appellants acknowledge they conducted a title search before they settled on the property and they knew there was no recorded easement. *Id.* at 36-37. However, Appellants contend that when they purchased the property, their impression was the prior owner "had continuous use of the parking area for generations." *Id.* at 13, 15. Conversely, Appellee maintains she had a "friendly arrangement" with the prior owners, whom she permitted to use the alleyway "[o]n occasion if they needed to access the rear of the home with a vehicle[.]" *Id.* at 40, 57 (stating she did not know the specifics of the arrangement with the prior owner because "there was not much use of [the] driveway so there was no reason to explore it").

Sometime in September of 2020, Appellee installed "stop" signs and "no trespassing" signs in the alleyway, as well as signage indicating the area was private property.  **See** N.T. at 16; Exhibit P-4.  Subsequently, Appellants closed on the property on November 5, 2020.  N.T. at 6.

On March 15, 2021, Appellants filed a civil complaint, requesting the court find an easement by necessity or implication with respect to Appellee's alleyway.  **See** Appellants' Complaint, 3/15/21, at 8-10.  The next day, Appellants filed a petition seeking a preliminary injunction directing Appellee "to remove any [and] all structures or barriers on her property with respect to the alleyway in order to allow [Appellants], and their invitees, to ingress and egress their parking area from and to Maple Street."  Appellants' Petition for Preliminary Injunction, 3/16/21, at 5.   In April of 2021, **after** Appellants sought legal redress, Appellee installed a gate in the alleyway that, when closed, "fully restrict[s] access to the alley[.]"  N.T. at 16-18.

The trial court conducted a hearing on April 20, 2021, at which Appellant Jon Crabtree and Appellee testified.  The next day, the trial court entered an order denying Appellants' petition for a preliminary injunction.  **See** Order, 4/21/21.  This timely appeal follows.[2]

Appellants raise one issue on appeal:

Whether the Lower Court erred as a matter of law and/or abused its discretion when it denied injunctive relief to . . . Appellants?

---

[2] Appellants complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellants' Brief at 4.

We review an order denying preliminary injunctive relief for an abuse of discretion, and our scope of review is plenary. ***SEIU Healthcare Pennsylvania (SEIU) v. Commonwealth***, 104 A.3d 495, 501 & n.7 (Pa. 2014).

> Under this highly deferential standard of review, an appellate court does not inquire into the merits of the controversy, but examines the record "to determine if there were any apparently reasonable grounds for the action of the court below."

***Id.*** (citations omitted).

In order to obtain preliminary injunctive relief, the moving party must establish the following six "essential prerequisites[:]"

> 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest.

***Warehime v. Warehime***, 860 A.2d 41, 46–47 (Pa. 2004) (citation and internal punctuation omitted).  If we determine the trial court properly found that **any one** of these prerequisites is not satisfied, then "'[a]pparently reasonable grounds' exist to support [the] court's denial of injunctive relief[.]" ***SEIU***, 104 A.3d at 501.

- 4 -

In the present case, the trial court found Appellants failed to establish three of the prerequisites for injunctive relief — (1) "enjoining [Appellee] from protecting her property rights would not restore the parties to their status as it existed before [she] erected barriers in the subject alleyway to block [Appellants'] access to the rear of their property[;]" (2) Appellants did not "prove that greater injury would result from refusing the injunction than from granting it[;]" and (3) Appellants failed to "demonstrate a clear right to relief and a likelihood of prevailing on the merits of their claims."  Trial Ct. Op., 7/1/21, at 4.  The court opined that while it "appreciated [Appellants'] claim of irreparable harm," it was "mindful" of Appellee's "competing interests," namely, that she "took steps to protect her property rights prior to the consummation of [Appellants'] purchase of their property and before [they] sought to use [her] driveway off of Maple Avenue."  *Id.*  Similarly, because Appellants were "relatively new owners and never utilized the driveway to access the rear of their property[,]" the trial court found that enjoining Appellee would not restore the status *quo*.  *Id.*  The court also determined that Appellants failed to prove, *via* the testimony of their sole witness, that "greater injury would result from refusing the injunction than from granting it."  *Id.*  Finally, the trial court found Appellants failed to demonstrate the likelihood they would prevail on the merits concerning their underlying claims that they were entitled to an easement by necessity or implication.  *Id.*

Appellants challenge each of the trial court's findings, which we consider *seriatim*.  First, Appellants argue that, although they had not closed on the

property when Appellee first obstructed the alleyway, "[t]he date to be considered . . . is the date on which the Agreement of Sale is signed, not the date of closing on the agreement." Appellants' Brief at 9. They maintain that once they signed the agreement of sale, they possessed "equitable title" to the property. *Id.*, citing *DiDonato v. Reliance Standard Life Ins. Co.*, 249 A.2d 327, 329 (Pa. 1969). Thus, because they were the "equitable owners" of the property in July — before Appellee posted "no trespassing" signs — Appellants insist injunctive relief was "necessary to prevent irreparable harm in the form of [their] inability to use their property as intended." Appellants' Brief at 10. Pursuant to this same line of reasoning, Appellants contend "injunctive relief was appropriate to restore the *status quo ante* to a date before . . . Appellee's improper obstruction of the driveway[.]" *Id.* at 11 (emphasis omitted).

We agree with the trial court's determination that, because Appellants never had the opportunity to use the alleyway **before** Appellee took actions to protect her property rights, entry of a preliminary injunction would not "restore the parties to their status as it existed immediately prior to the alleged wrongful conduct[,]" *i.e.*, the *status quo*. **See Warehime**, 860 A.2d at 46; Trial Ct. Op. at 4. Although Appellants did sign the agreement of sale **before** Appellee posted the no trespassing signs, Jon Crabtree conceded that the agreement of sale allowed for a title search prior to closing, and he "was able to search the title and see that there was no recorded easement." **See** N.T. at 36-37. Thus, the fact that Appellants may have had "equitable

- 6 -

ownership" of the property in July of 2020 is, in itself, of no moment.[3]  At the time Appellee posted the "no trespassing" signs in September of 2020, Appellants had not yet utilized the alleyway to access the rear of their property.  Moreover, when they discovered there was, in fact, no recorded easement with respect to the alleyway, they could have opted out of the purchase of the property.

Appellants downplay the actions Appellee took **before** the settlement — posting signage — by arguing, "[t]he posting of the 'No Trespassing' signs, by itself, did not impede or obstruct the use of the driveway to the Premises."

_____

[3] We note that the case upon which Appellants rely, **DiDonato**, has no relevance to the facts presented herein.  In that case, the appellants purchased a property that was zoned for industrial use.  **DiDonato**, 249 A.2d at 328.  After the agreement of sale was executed, but before settlement, an ordinance was passed which re-zoned the property as residential.  **Id.**  However, the public records did not reflect the zoning change until after settlement, and neither party was aware of the re-zoning on the date of settlement.  **Id.** at 328-29.  The appellants learned of the zoning change two years later when they attempted to sell the property.  **Id.** at 329.  They subsequently brought an action in equity to rescind the agreement of sale with the appellee.  **Id.**  The trial court entered an adjudication in favor of the appellee.  **Id.**

The Pennsylvania Supreme Court affirmed on appeal, noting that "when the Agreement of Sale is signed, the purchaser becomes the equitable or beneficial owner [and] bears the risk of loss for injury occurring to the property . . . before the settlement."  **DiDonato**, 249 A.2d at 329.  The Court concluded there was no basis "for treating losses resulting from zoning changes occurring between the execution of the Agreement of Sale and settlement differently from casualty and other kinds of loss occurring between those periods."  **Id.** at 330.  Under this same reasoning, one could argue that Appellants, as purchasers of the real estate, must bear the risk that they do not have an express or implied easement over Appellee's alleyway.  Thus, **DiDonato** provides Appellants with no basis for relief.

Appellants' Brief at 11 n.4. Rather, they focus on Appellee's installation of a gate, which occurred **after** settlement, and "actually blocked off the driveway." *Id.* at 11. However, in doing so, Appellants ignore the fact that the posts and gate were not installed until "about two weeks" prior to the preliminary injunction hearing, that is, early April 2021. *See* N.T. at 16. Thus, those obstructions were erected **after** Appellants petitioned for injunctive relief. Accordingly, their implication that the signs were not obstructive enough falls short.

Appellants also challenge the trial court's determination that "the entry of an injunction . . . would not have caused greater injury than the denial of injunctive relief." Appellant's Brief at 11. They contend that the deprivation of a property owner's "ability to use one's real property is . . . not compensable by money damages." *Id.* at 12. Appellants argue "the driveway had been used for decades by Appellants' predecessors-in-title to access the rear of the Premises[,]" which, they assert, Appellee admitted in an email to their realtor. *Id.* They also insist that "[l]eaving the driveway unobstructed as it had been for decades . . . does not seem to place an enormous hardship on . . . Appellee[, but] eliminating Appellants' ability to use their only **private off-street** parking constitutes greater injury than if they were able to do so." *Id.* (emphasis added).

With regard to this prerequisite, the trial court found Appellants failed to satisfy their burden of proof. *See* Trial Ct. Op. at 8. We agree. Appellants attempted to prove that their predecessors in title used the paved area behind

their property as a parking lot by introducing Google Earth photographs of the property from June 2004, April 2010, and May 2016. *See* N.T. at 21-23, Exhibits P-8, P-9, P-10. Each photograph depicts one or more vehicles presumably parked in the area behind Appellants' property. *See id.* However, without any corroborating testimony or other evidence, it is unclear whether these vehicles, in fact, belonged to the predecessor in title, and whether Appellee, or the prior owner of her property, gave the vehicle owners express permission to use the alleyway to access the area. Thus, the photographs themselves do not prove Appellants' claim. Furthermore, while Appellants insist their inability to access private, off-street parking constitutes a hardship, the record supports the trial court's finding that Appellants "had access to available parking spaces on street in front of their property." *See* Trial Ct. Op. at 8.

Lastly, Appellants challenge the trial court's finding that they failed to establish a clear right to relief. Appellants' Brief at 13. To establish this prerequisite, "the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *SEIU*, 104 A.3d at 506.

Appellants assert that "[i]t is obvious that the driveway was created to permit vehicle access to the rear portion of . . . the Premises, as it is the only way a vehicle could access the historical parking area on the rear of the Premises." Appellant's Brief at 13. They decline, on the "limited record," to

"engag[e] in a lengthy discussion . . . of the specific elements" required for the creation of an easement. *Id.* Nevertheless, they insist that based on a "complete record," they will be able to show either "that an easement for the benefit of the Premises was reserved in its earlier chain of title, or that such an easement is clearly implied by the subdivision actions of prior owners." *Id.* at 14. *See id.* at 13-14 n.7 (stating that because Appellee "concede[s]" both properties were once owned by a common owner, who later conveyed one property to another, "[i]t seems more than likely that a deeper examination of the chains of title to the parties' properties will show that a prior owner deliberately created the driveway for the benefit of . . . Appellants' property, at a time when that owner held title to both" properties). Moreover, Appellants argue the trial court focused on "necessity," by emphasizing their property is not "landlocked" and they have available on-street parking. *Id.* at 14. Without conceding the point, however, they assert that "necessity is not necessary to establish an implied easement." *See id.*

First, we conclude Appellants fail to provide any cogent argument as to why they are entitled to an easement by necessity. In order to establish an easement by necessity, a property owner must prove the following:

> 1) The titles to the alleged dominant and servient properties must have been held by one person.
>
> 2) This unity of title must have been severed by a conveyance of one of the tracts.
>
> 3) The easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity

- 10 -

existing both at the time of the severance of title and at the time of the exercise of the easement.

An easement by necessity is always of **strict necessity**. An easement by necessity never exists as a mere matter of convenience.

*Phillippi v. Knotter*, 748 A.2d 757, 760 (Pa. Super. 2000) (citations omitted). "Claiming the existence of an easement by necessity contemplates a situation in which a parcel of land is landlocked[,]" that is, "'[s]urrounded by land, often with the suggestion that there is little or no way to get in or out without crossing the land of another.'" *Id.* at 760 & n.4.

Here, the trial court found Appellants failed to demonstrate an easement by necessity. Appellants have full access to their property *via* West Fourth Avenue. As the trial court noted, "it is only the **rear area** [of the property] that is arguably landlocked[, and Appellants] intend to use the rear area as a parking lot for the **convenience** of their tenants." Trial Ct. Op. at 7 (emphasis added). Because the establishment of an easement by necessity requires "strict necessity," and not mere "convenience," we do not disturb the trial court's finding that Appellants are not likely to prevail on the merits of this claim. *See Phillippi*, 748 A.2d at 760.

Conversely, an easement by implication does not require "strict necessity." Rather, it "can be found to exist where the intent of the parties is demonstrated by the terms of the grant, the property's surroundings and any other res gestae of the transaction." *Phillippi*, 748 A.2d at 761 (citation omitted). "An easement by implication could have arisen only at the time at which ownership of the two parcels in question first became separated." *Id.*

at 762. The courts of this Commonwealth have utilized two different tests — the traditional test and the Restatement of Property test — to determine whether an easement has been created by implication. ***Id.*** at 761.

> The Supreme Court delineated the traditional test as follows:
>
> "[W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right of way."
>
> \* \* \*
>
> Easements by implied reservation . . . are based on the theory that **continuous use of a permanent right-of-way gives rise to the implication that the parties intended that such use would continue**, notwithstanding the absence of necessity for the use.

***Bucciarelli v. DeLisa***, 691 A2d 446, 449 (citations omitted and emphasis added).

Under the Restatement test, the trial court applies "a balancing approach, designed to ascertain the actual or implied intention of the parties." ***Phillippi***, 748 A.2d at 762 (citation omitted).

> "No single factor under the Restatement approach is dispositive." Section 476 of the Restatement of Property designates the following factors as important in determining whether an easement by implication exists:
>
> > (a) whether the claimant is the conveyor or the conveyee,
> >
> > (b) the terms of the conveyance,
> >
> > (c) the consideration given for it,

(d) whether the claim is made against a simultaneous conveyance,

(e) the extent of necessity of the easement to the claimant,

(f) whether reciprocal benefits result to the conveyor and the conveyee,

(g) the manner on which the land was used prior to its conveyance, and

(h) the extent to which the manner of prior use was or might have been known to the parties.

In addition, this [C]ourt has noted that "[t]he extent to which an easement is necessary under the circumstances is a factor heavily weighed in determining whether an easement should be implied."

**Id.** (citations omitted).

In rejecting Appellants' assertion that they have a clear right to relief, and are entitled to an easement by implication, the trial court opined:

[Appellants] offered evidence, through the testimony of [Jon] Crabtree, that the [prior owners] had full use of [Appellee's] driveway. [Appellee] countered that occasional accommodation was made to allow the [prior owners] to use the driveway, but this fell short of the open, visible, permanent and continuous use supporting a finding of easement by implication. [Appellants] offered only the testimony of . . . Crabtree without any corroborating evidence to give rise to a substantial question regarding [their] claim that an easement by implication can be found.

Trial Ct. Op. 7-8.

The record supports the trial court's conclusions. Although Appellants were not required to prove their underlying claim, they had to show their "right to relief is clear" and that they were "likely to prevail on the merits[.]" **See Warehime**, 850 A.2d at 47. Here, Appellants presented only the testimony of Jon Crabtree and historical photos of the rear parking area. While Crabtree

- 13 -

testified it was his understanding — based upon discussions with his realtor — that "the prior owner had continuous use of the parking area for generations[,]" he provided no support for this assertion. **See** N.T. at 15. Moreover, as noted **supra**, the photographs themselves prove nothing. Conversely, Appellee testified she had a "friendly arrangement" with the prior owners, and would allow them to use the alley "[o]n occasion if they needed to access the rear of the home with a vehicle[.]" **Id.** at 40. This was the only evidence presented concerning the prior owners' use of the alleyway. We agree with the trial court that it falls short of demonstrating Appellants' clear right to relief.

Because our review reveals "apparently reasonable grounds" for the trial court's ruling, we affirm the order denying Appellants' petition for a preliminary injunction.[4] **See SEIU**, 104 A.3d at 501.

Order affirmed.

Appellee's Motion to Supplement the Record on Appeal is DENIED.

---

[4] We need not address Appellants' further claims that they proved two of the additional prerequisites for preliminary injunctive relief. **See** Appellants' Brief at 15-16. As noted **supra**, if we determine the trial court properly found that **any one** of these prerequisites are not satisfied, then "'[a]pparently reasonable grounds' exist to support [the] court's denial of injunctive relief[.]" **SEIU**, 104 A.3d at 501.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/09/2022