J-S11003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RICHARD T. PERROTTE AND MARY E. PERROTTE | : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| TERRY E. SINGER AND WENDY K. SINGER | | No. 1123 WDA 2024 |
| Appellants | | |

Appeal from the Order Entered February 2, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-23-009763

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: April 10, 2025**

Terry E. Singer and Wendy K. Singer (Appellants) appeal by permission from the order overruling their preliminary objections to the amended complaint in quiet title filed by Richard T. Perrotte and Mary E. Perrotte (collectively, the Perrottes), in this action regarding an easement.  After careful consideration, we reverse and remand for the entry of an order sustaining Appellants' preliminary objections, dismissing the Perrottes' complaint, and determining whether dismissal is with or without prejudice.

On August 15, 2023, the Perrottes commenced this action by filing a petition for preliminary and permanent injunctive relief (petition for injunction).  Petition for Injunction, 8/15/23.  In their petition for injunction, the Perrottes sought to enjoin Appellants from constructing a flower bed in a

30-square-foot area abutting the Perrottes' right-of-way easement. *Id.* ¶¶ 8-9. The Perrottes asserted that the flower bed would "be right up against [their] property line, leaving no green space between property lines." *Id.* ¶ 13 (capitalization modified). According to the Perrottes' petition for injunction, "the flower bed will eliminate entry access to about fifty percent (50%) of [the Perrottes'] paved driveway." *Id.* ¶ 14.

On August 17, 2023, Appellants and the Perrottes entered into a consent order to maintain the status quo until resolution of the dispute. Consent Order, 8/17/23.

The Perrottes filed a complaint to quiet title on September 20, 2023. Appellants preliminarily objected to the complaint and, on November 14, 2023, the trial court sustained Appellants' preliminary objections and dismissed the complaint without prejudice.

The Perrottes filed an amended complaint to quiet title on November 30, 2023. The Perrottes averred that on September 16, 2002, they purchased property located at 115 Martin Road, Pittsburgh, Pennsylvania. Amended Complaint, 11/30/23, ¶¶ 5-6. According to the amended complaint, Appellants own property located at 117 Martin Road, Pittsburgh, Pennsylvania. *Id.* ¶ 7. The Perrottes stated, "[t]here is a separate recorded instrument [(the easement deed)] … granting a right[-]of[-]way easement [(the easement)], out of necessity, from [Appellants] to [the Perrottes] so that [the Perrottes] could access their property." *Id.* ¶ 8. The Perrottes averred the easement

"was an easement by necessity, an express easement, and an appurtenant easement." *Id.* ¶ 9 (capitalization modified). According to the amended complaint, the easement predated the purchase of the Perrottes' and Appellants' respective properties. *Id.* ¶ 17.

Regarding the allegation of an easement by necessity, the amended complaint averred the Perrottes' property is "completely landlocked, and there is no other reasonable way to access it." *Id.* ¶ 10. The amended complaint acknowledges that the easement deed created an express easement. *Id.* ¶ 13. The amended complaint claims the easement is an appurtenant easement. *Id.* ¶ 14. Regarding the appurtenant easement, the Perrottes averred "the dominant estate expanded or modified over time and, accordingly, the easement naturally grew to cover the new additions or changes." *Id.* ¶ 16.

The amended complaint acknowledges that the express easement provided for a 20-foot-wide right-of-way. *Id.* ¶ 19. However, the Perrottes alleged that the grantors of the original easement, Sarah H. Rose and Robert J. Rose (the Roses), widened the easement to its current width of 37 feet "at the widest point, on or about twenty-one (21) years ago," before the Perrottes purchased the property. *Id.*

The amended complaint states that in the summer of 2016, the Perrottes added a paved driveway to their property. *Id.* ¶ 22. By contrast,

the easement "is a gravel thruway/driveway that runs from Martin Road, past [Appellants'] driveway and up to [the Perrottes'] paved driveway." *Id.* ¶ 23.

According to the amended complaint, Appellants subsequently notified the Perrottes of Appellants' intention to construct a 30-square-foot flower bed abutting the Perrottes' driveway. *Id.* ¶ 24. The Perrottes claimed that Appellants' plans will cause harm to their property, as it will eliminate entry access to about 50% of their paved driveway. *Id.* ¶¶ 27-28.

The amended complaint also asserts that Appellants also proposed the installation of surface drains "at the furthest point from [the Perrottes'] house." *Id.* ¶ 25. According to the amended complaint, Appellants' plans will cause "water diversion" onto the Perrottes' property, and restrict their use of the paved driveway. *Id.* ¶ 29. For this reason, the Perrottes' amended complaint sought to "quiet the title based on the natural growth of the easement and permanently enjoin [Appellants] from" infringing on the easement and/or right-of-way. *Id.* (prayer for relief). The amended complaint seeks to amend the easement deed to reflect the current dimensions of the easement, and include language to affirm the natural growth of the easement going forward. *Id.*

On December 7, 2023, Appellants filed preliminary objections to the amended complaint in the nature of a demurrer. Preliminary Objections to Amended Complaint, 12/7/23. Appellants pointed out that in the original complaint, the Perrottes alleged that the Roses widened the easement to its

current width 19 years ago, while the amended complaint alleges the Roses widened the easement 21 years ago. *Id.* ¶¶ 4-5. Appellants challenged the Perrottes' averment that over time, "there is a natural growth of an easement," as the Perrottes cite no statutes or case law to support this assertion. *Id.* ¶ 9.

In their preliminary objections, Appellants alleged that the width of a prescriptive appurtenant easement cannot be increased. *Id.* ¶ 17. In the alternative, Appellants asserted that the Perrottes failed to establish the 21-year period necessary to create a prescriptive appurtenant easement, as their paved driveway was constructed in 2016. *Id.* ¶¶ 19, 22.

The trial court overruled Appellants' preliminary objections to the amended complaint on February 2, 2024. Appellants sought reconsideration, which the trial court denied on February 18, 2024. However, in its February 18, 2024, order, the trial court expressly determined that immediate appeal would facilitate resolution of the entire case.

Rather than filing a notice of appeal,[1] Appellants filed a petition for permission to appeal on March 14, 2024. *See generally* Pa.R.A.P. 1311

---

[1] We observe that Pennsylvania Rule of Appellate Procedure 341 provides for immediate appeal upon a determination of finality:

> **(c)** Determination of Finality. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the trial court … may enter a final order as to one or more but

*(Footnote Continued Next Page)*

J-S11003-25

(setting forth the procedure for filing a petition for permission to appeal). This Court granted Appellants' petition on September 18, 2024. Appellants filed a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, and the trial court has filed an opinion.

Appellants present the following issue:

[Whether t]he trial court erred in overruling [Appellants'] preliminary objections raising a demurrer for the Perrottes' failure to state a cause of action that would allow for the expansion of the express easement due to "natural growth[,]" [which is] contrary to Pennsylvania law[?]

Appellants' Brief at 7.

_____

fewer than all of the claims and parties **only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered.** … In addition, the following conditions shall apply:

**(1)** An application for a determination of finality under subdivision (c) must be filed within 30 days of entry of the order. During the time an application for a determination of finality is pending, the action is stayed.

\* \* \*

**(3)** A notice of appeal may be filed within 30 days after entry of an order as amended unless a shorter time period is provided in Pa.R.A.P. 903(c). Any denial of such an application is reviewable only through a petition for permission to appeal under Pa.R.A.P. 1311.

Pa.R.A.P. 341(c).

- 6 -

In reviewing an order ruling on preliminary objections, "the appellate court must apply the same standard as the trial court." ***Godlove v. Humes***, 303 A.3d 477, 480 (Pa. Super. 2023) (citation omitted).

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***Id.*** at 481 (citation omitted).

Appellants claim the trial court erred in concluding the "natural growth" of the easement allowed for its permanent expansion. Appellants' Brief at 13. Appellants further dispute the trial court's reliance on ***Bodman v. Bodman***, 321 A.2d 910 (Pa. 1974), ***Leistner v. Borough of Franklin Park***, 771 A.2d 69 (Pa. Cmwlth. 2001), and ***Hoch v. Phila. Elec. Co.***, 492 A.2d 27 (Pa. Super. 1985), to support the natural expansion of an express easement. Appellants' Brief at 14. According to Appellants, ***Hoch*** and ***Bodman*** did not address the physical widening of a right-of-way easement. ***Id.*** Appellants assert that in ***Bodman***, the Supreme Court considered the usage of an easement over time, and the change of modes of transportation. ***Id.*** In ***Leistner***, Appellants argue, the Commonwealth Court expressly forbade the enlargement and expansion of an easement. ***Id.*** Appellants assert that the Perrottes and trial

court "fail[ed] to show any case law which shows a physical widening of the dimensions of an express and appurtenant easement as reasonable." *Id.*

Appellants argue that the Perrottes failed to plead a cause of action that would allow for expansion of the express easement based upon natural growth, which encroached "at least seventeen feet at times into [Appellants'] property and … naturally grew to cover the new additions or changes to the [Perrottes'] property." *Id.* at 15 (punctuation modified). Appellants point out the Perrottes failed to claim the expanded easement would assist the natural evolution of their own property. *Id.* at 15-16. Rather, the Perrottes filed the action to prevent Appellants from installing a flower bed that would abut the Perrottes' easement. *Id.* at 16.

An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 676 n.7 (Pa. 2005) (quoting Black's Law Dictionary, 8th ed. (2004), at 1108)). Where, as here, an easement is appurtenant, it runs with the land designated as the dominant tenement, which is the land benefitted by the easement. *See Assocs. of Chapman Lake v. Long*, 253 A.3d 1210, 1220 (Pa. Super. 2021) (recognizing an easement appurtenant runs with the land); *see also Shaffer v. Baylor's Lake Ass'n*, 141 A.2d 583, 586 (Pa. 1958) (contrasting an easement appurtenant with an easement in gross, and

stating that "[a]n easement in gross is a mere personal interest in, or right to use, the land [or water] of another ….").

Reviewed in a light most favorable to the Perrottes, the amended complaint averred that the easement deed granted an "easement by necessity, an express easement, and an appurtenant easement." Amended Complaint, 11/30/23, ¶ 9. We first address the legal sufficiency of the Perrottes' claim regarding the natural growth and expansion of their express easement.[2]

When reviewing an express easement,

> the language of the agreement, unless ambiguous, controls. **See Fedorko Properties, Inc. v. C.F. Zurn & Associates,** 720 A.2d 147, 149 (Pa. Super. 1998). The terms of the instrument conveying the interest are interpreted by applying general principles of contract law. **See Hann v. Saylor**, … 562 A.2d 891, 893 (Pa. Super. 1989). Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract. **See Samuel**

---

[2] We note that in its opinion, the trial court did not discuss the legal constraints of an express easement. Rather, the trial court cited **Leistner** for the proposition that

> an enlargement of an easement beyond its original terms does not preclude reasonable adaptations to the use of the easement in response to changing circumstances, provided such adaptations do not impose an unreasonable burden on the servient estate.

Trial Court Opinion, 11/30/24, at 7. However, **Leistner** did not involve interpretation of an express easement. Further, the Commonwealth Court ultimately held that "[t]he right-of-way easement in this instance could not be found to extend to cover an improved road, some twenty feet in width, handling heavy trucking in the amount of sixty tons of refuse a day." **Leistner**, 771 A.2d at 75.

> ***Rappaport Family Partnership v. Meridian Bank,*** … 657 A.2d 17, 21 (Pa. Super. 1995).
>
> Where a term is ambiguous and susceptible of more than one reasonable interpretation, however, the court is free to receive extrinsic, *i.e.,* "parol evidence," to resolve the ambiguity. ***See id.*** "A contract will be found ambiguous: if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." ***Id.*** A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction. ***See*** [***id.*** at] 21-22.
>
> Ambiguity within a contract may be latent or patent. ***See*** [***id.***] at 22. A patent ambiguity appears on the face of the contract and is a result of defective or obscure language. ***See id.*** Although Pennsylvania law provides that "parol evidence" may not be introduced unless the language of the written agreement is ambiguous on its face, extrinsic facts and circumstances may be proved to show that language apparently clear and unambiguous on its face is, in fact, latently ambiguous. ***See Kohn v. Kohn,*** … 364 A.2d 350, 353-54 (Pa. Super. 1976) [(*en banc*)].

***Baney v. Eoute***, 784 A.2d 132, 136 (Pa. Super. 2001) (paragraph breaks added). Significantly, "[**w**]**here the width of an easement is unambiguously specified in the grant, the grantee is obviously restricted to that width even if it is insufficient for his purposes and enjoyment.**" ***Zettlemoyer v. Transcon. Gas Pipeline Corp.***, 657 A.2d 920, 924 (Pa. 1995) (emphasis added).

Instantly, an express easement was created by an easement deed dated May 6, 1985.[3] Amended Complaint, 11/30/23, ¶ 8, Exhibit 3. The easement deed between the Roses, as grantors, and Marty M. Marra (Marra), the Perrottes' predecessor-in-title, as grantee, is attached to the amended complaint as Exhibit 3. The easement deed provided, in relevant part, as follows:

> WHEREAS, the [Roses] are seized in fee simple absolute of a certain parcel of ground in Ross Township, Allegheny Couty, Pennsylvania, situate on the westerly side of Martin Road, and adjoining the land of [Marra], and
>
> WHEREAS, [Marra] desires to obtain a right of way easement across the property mentioned above, and,
>
> WHEREAS, [Marra] owns property which he wishes to be served by this right of way easement,
>
> **NOW THEREFORE, in consideration of One ($1.00) Dollar paid to [the Roses] by [Marra] and another agreement in a separate document, the receipt of which is hereby acknowledged, the [Roses] hereby grant, bargain, sell and convey a 20-foot wide right of way easement to [Marra], his heirs and assigns for the purpose of ingress and egress across the above-mentioned property now held by the [Roses] to the property now held by [Marra] for the normal use of one single family residential dwelling.**
>
> In further consideration the parties agree to build a slag road along the right of way with the [Roses] to pay thirty-nine (39%) percent of the expenses, and [Marra] to pay the remaining sixty-one (61%) percent.
>
> ….

_____

[3] As the trial court observed in its opinion, "the Amended Complaint does not include a prescriptive easement as a basis for relief." Trial Court Opinion, 11/27/24, at 5.

**The right of way easement for the purpose of ingress and egress across the [Roses'] property is described as follows:**

ALL that certain lot or piece of ground situate in Ross Township, Allegheny County, Pennsylvania, being more particularly described as follows:

BEGINNING at a point on the southwest terminus of Martin Road, 70' wide at the southeast corner of Lot 139 in Rolling Hills Plan No. 3, unrecorded and the northly line of Lot No. 1 in Oak Braes Development, as recorded in Plan Book Volume 36, pages 12 and 13; thence along the dividing line of Lot No. 1 in said Oak Braes Development and Lot No. 139 in said Rolling Hills Plan No. 3, N 85° 13' W., 89.85' to a point; thence through property of the Grantor, N. 89° 17' W., 100.00' to a point on the easterly line of Berkeley Terrace Plan as recorded in Plan Book Volume 60, page 90 and 91; thence along the easterly line of the Berkeley Terrace Plan, S. 0° 43' W., 20.00' to a point; thence through property of the [Roses], S. 89° 17' E. 100' to a point on the westerly line of Lot No. 1 in said Oak Braes Development; thence through property of the [Roses], S 85° 13' E., 109.85' to a point; thence continuing through the property of the [Roses], N. 0° 43' E., 20.00' to a point on the southerly terminus of Martin Road; thence along the southerly line of Martin Road N. 85° 13' W. 20' to a point at the place of beginning.

*Id.* (emphasis added).

Also attached to the amended complaint is the March 12, 2014, deed conveying property from the Sarah H. Rose Real Estate Trust[4] to Appellants. *Id.* Exhibit 2. This deed recognized the conveyance is

subject to a deed of easement for a right of way for the purpose of constructing and maintaining a driveway for ingress, egress and regress to property herein described and property now or formerly of [Marra], *et ux*, as more fully described in Deed Book Volume 7084, page 115.

_____

[4] The Sarah H. Rose Real Estate Trust acquired the property from the Roses. *See* Amended Complaint, 11/30/23, Exhibit 2.

Subject to an easement agreement dated May 13, 1988[,] and recorded in Deed Book Volume 7835, page 464 ….

Amended Complaint, 11/30/23, Exhibit 2 (capitalization modified).

Our review discloses the language of the easement deed is clear and unambiguous. It created a 20-foot-wide right-of-way across the servient property (now Appellants' property). Because the width of the easement is specified in the easement deed, the grantees (now the Perrottes) are "restricted to that width even if it is insufficient for [their] purposes and enjoyment." *Zettlemoyer*, 657 A.2d at 924. The width of the deed is controlled by the express language of the easement deed. The allegations of the amended complaint are legally insufficient to establish expansion of the express easement.

Regardless, our review of the Perrottes' amended complaint further discloses no allegation that the present easement is insufficient for ingress to and egress from their property. The Perrottes argue that construction of the flower beds that **abut** the easement would block a portion of their paved driveway. However, this allegation does not establish that the easement's dimensions, as stated in the easement deed, are inadequate for ingress and egress to their property. Even viewed in a light most favorable to the Perrottes, the allegations of the amended complaint are legally insufficient to establish an expansion of the express easement. Therefore, we conclude the

trial court erred in not sustaining Appellants' preliminary objection challenging the proposed expansion of the express easement.

In their amended complaint, the Perrottes also averred an easement by necessity. Amended Complaint, 11/30/23, ¶ 9. The following elements must be proven to establish an easement by necessity:

> The titles to the alleged dominant and servient properties must have been held by one person.
>
> This unity of title must have been severed by a conveyance of one of the tracts.
>
> The easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

***Phillippi v. Knotter***, 748 A.2d 757, 760 (Pa. Super. 2000).

Viewed in a light most favorable to the Perrottes, the amended complaint does not establish that title to their property and Appellants' property were once held by a common grantor. ***See id.*** Rather, the amended complaint, and its exhibits, establish that the Roses conveyed the easement to Marra by means of the May 6, 1985, easement deed. ***See*** Amended Complaint, 11/30/23, Exhibit 4 (easement deed providing that Marra "desires to obtain a right of way easement across the property"; and that the Roses, as grantors, are "seized in fee simple absolute of a certain parcel … adjoining the land of" Marra). There is no allegation or attachment indicating that the Roses, or any predecessor, once held "the titles to the dominant and servient properties" now at issue. ***Phillippi***, 748 A.2d at 760. For that reason, the

amended complaint is legally insufficient to establish an easement by necessity.

Even if the Roses owned title to the dominant and servient properties at the time of severance, their amended complaint would be legally insufficient to establish an easement by necessity as a matter of law. Marra had acquired an express easement by means of the May 6, 1985, deed. The Perrottes' amended complaint does not aver the 20-foot-wide express easement was inadequate for Marra to access his property at the time of the easement's severance. **See Phillippi**, 748 A.2d at 760 (requiring that the easement must be necessary in order for the owner of the dominant tenant to use his land, "with the necessity existing both **at the time of the severance of title** and at the time of the exercise of the easement." (emphasis added)). For this additional reason, we conclude the amended complaint is legally insufficient to establish an easement by necessity.

We note the amended complaint's averment that the Roses widened the easement to accommodate vehicles to construct the Perrottes' house.[5] However, the Perrottes failed to aver the 20-foot express easement was inadequate for ingress to and egress to the property at the time of severance of title, and at the time of the easement's exercise. Instead, the Perrottes aver that a flower bed placed *outside of the easement*, on Appellants'

---

[5] **See** Amended Complaint, 11/30/23, ¶ 20.

property, would block a portion of the paved driveway on the Perrottes' property. The amended complaint does not aver that this flower bed would preclude the Perrottes from accessing their property by use of the express easement. *See Phillippi*, 748 A.2d at 760. Consequently, we agree with Appellants that the amended complaint's claim for expansion of an easement by necessity is legally insufficient. We therefore conclude the trial court erred in not sustaining Appellants' preliminary objection to the amended complaint as legally insufficient to quiet title to an expanded easement.

Finally, we address the amended complaint's allegation that a change in drainage on Appellants' property could cause them damage and irreparable harm. Amended Complaint, 11/30/23, ¶ 29. In Pennsylvania, specialized rules have been developed as to when an upper landowner may be liable for the private nuisance caused by the effects of surface water draining from a landowner's property:

> Our Supreme Court has held that, "[b]ecause water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior." *Chamberlin v. Ciaffoni*, … 96 A.2d 140, 142 (Pa. 1953), quoting *Kauffman v. Griesemer*, 26 Pa. 407 (Pa. 1856). Therefore, "an owner of higher land [is] under no liability for damages to an owner of lower land caused by water which naturally flows from the one level to the other." *Chamberlin*, 96 A.2d at 142.
>
> Notwithstanding the above, "[t]he right of the upper landowner to discharge water on the lower lands of his neighbor is, in general, a right of flowage only, in the natural ways and natural quantities." *Pfeiffer v. Brown*, … 30 A. 844, [845] … (Pa. 1895). Thus, if the upper landowner "alters the natural conditions so as

to change the course of the water, or concentrate[s] it at a particular point, or by artificial means [] increase[s] its volume, he becomes liable for any injury caused thereby." ***Id.*** In other words, it is "only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury." ***Lucas v. Ford***, … 69 A.2d 114, 116 … (Pa. 1949).

***Youst v. Keck's Food Serv.***, 94 A.3d 1057, 1073 (Pa. Super. 2014).

In their amended complaint, the Perrottes averred that Appellants' construction of the flower beds "will cause water diversion onto [the Perrottes'] property and will restrict use of their paved driveway[,] causing irreversible harm." Amended Complaint, 11/30/23, ¶ 29. However, these allegations provide no legal basis for expansion of the express easement or cure the deficiencies in their claim of an easement by necessity. Moreover, the Perrottes have pled a cause of action to quiet title. They have not pled a cause of action for private nuisance or to prevent a private nuisance. As such, these allegations are legally insufficient to sustain the amended complaint's cause of action for expansion of the easement.

Based on the foregoing, we reverse the trial court's order overruling Appellants' preliminary objections. We remand for the entry of an order sustaining Appellants' preliminary objections and dismissing the amended complaint. We leave for the trial court's determination whether the amended complaint is dismissed with or without prejudice.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/10/2025